Elba L. MEWBORN, Appellant,

v.

U.S. LIFE CREDIT CORPORATION, Appellee.

No. 83–100.

District of Columbia Court of Appeals.

Argued Nov. 21, 1983.

Decided March 15, 1984.

Andra Barmash Greene, Washington, D.C., with whom William E. Potts, Jr. and

Courtenay Ellis, Washington, D.C., were on the brief, for appellant.

Michael Fradkin, Baltimore, Md., for appellee.

Murray I. Resnick, Baltimore, Md., also entered an appearance for appellee.

Before FERREN, BELSON and TERRY, Associate Judges.

FERREN, Associate Judge:

We consider an appeal from an order reinstating a default judgment against appellant, Elba Mewborn, for the balance due on a note. (The default judgment had been erroneously vacated because of a clerical mistake in recording the result of a hearing at which the court had denied appellant's motion to vacate.) Because the trial court did not sufficiently consider whether appellant received adequate notice of the proceedings or proffered a *prima facie* adequate defense, we conclude that the trial court abused its discretion in denying the motion to vacate the default judgment. Accordingly, we reverse and remand for further proceedings as to whether the judgment should be vacated.

I.

Appellee's complaint, filed November 25, 1981, alleged that appellant and her husband, James Mewborn, had signed a promissory note for $2,074.55 at 18% interest in 1975, and that they had defaulted on the note in 1977, leaving a balance due of $1,479.33. Upon receiving a copy of the complaint, appellant promptly contacted appellee. She said that her husband had died in 1980 and that she thought the loan was covered by insurance because her husband had died while the debt was still owing.[1]

According to appellant—without contradiction of record by appellee—a representative of appellee told her to send the death certificate and said that she would be contacted if there was any problem.

Appellant heard nothing further about the matter until she was notified of the default judgment entered on January 27, 1982.[2] Eight days later, on February 4, appellant, acting *pro se,* filed a verified answer and a motion to vacate the default judgment. On May 27, 1982, the trial court held a hearing on the motion, at which the court reviewed the factual allegations with appellant and discussed the insurance defense with appellant and counsel for appellee. The court concluded:

THE COURT: [W]hile I understand you thought that the life insurance would cover this, it does appear that it doesn't cover it.

[APPELLANT]: Yeah.

THE COURT: Whatever the reason and whether you think it's right or not. And it doesn't appear otherwise that you are denying that this money was owed, so that there's no way I can grant your motion to vacate the default judgment.

[APPELLANT]: Um-hum.

THE COURT: You understand that. But that doesn't mean you might not be able to work something out.

The court clerk, however, erroneously entered on the docket that the court had granted the motion to vacate.

Apparently believing that her motion had been granted, appellant obtained counsel and filed a motion for leave to file an amended answer. In its opposition, appellee pointed out that the motion to vacate had in fact been denied. On December 16, 1982, the trial court issued an order explain-

---

1. Appellant ·and her husband had obtained credit life insurance on the loan from U.S. Life Credit Insurance Company, payable through appellee.

2. At the May 27, 1982, hearing on appellant's motion to vacate the default judgment, she acknowledged that she had received back the death certificate, but "not until after they filed

a petition for me to come down here to court." There is no clear evidence—and appellee does not assert—that appellant received the death certificate before appellee obtained the default judgment. And there is no evidence, in any event, that appellee notified appellant, before obtaining the default judgment, that the loan was not covered by insurance.

ing that the motion to vacate had been denied and reinstating the default judgment for $1,479.33, with interest at 18% from June 27, 1977, to July 17, 1978 (the maturity date) and at the statutory rate of 6% thereafter plus court costs.

## II.

■ Under Super.Ct.Civ.R. 60(b), the trial court may vacate a final judgment for "mistake, inadvertence, surprise, or excusable neglect," for "fraud . . . misrepresentation, or other misconduct of an adverse party," or for "any other reason justifying relief."[3] While our standard of review is abuse of trial court discretion, we will reverse in the default-judgment context for even "a slight abuse of discretion," given the policy generally favoring a trial on the merits. *Clark v. Moler,* 418 A.2d 1039, 1041 (D.C.1980); *Dunn v. Profitt,* 408 A.2d 991, 993 (D.C.1979) (per curiam); *Jones v. Hunt,* 298 A.2d 220, 221 (D.C.1972).

■ On appeal from denial of a motion to vacate a default judgment, we are to evaluate the trial court's exercise of discretion by considering whether the movant had actual notice of the proceeding, acted promptly after learning of the default judgment, proceeded in good faith, and presented a *prima facie* adequate defense, and also whether the non-moving party would be prejudiced. *Clark, supra,* 418 A.2d at 1043; *Dunn, supra,* 408 A.2d at 993; *Jones, supra,* 298 A.2d at 221–22.

■ Appellant had actual notice of the complaint. However, her failure to answer and to appear at the hearing on the merits—resulting in the default judgment— was a result of appellee's misleading conduct. When she contacted appellee's representative about the complaint, he said that someone would get back to her about her claim of life insurance coverage on the loan, and that she need take no action beyond sending in the death certificate. Obviously, creditors cannot be permitted to manipulate debtors into effective abandonment of their legal defenses. Therefore, if it is true, as appellant alleges—without challenge by appellee—that a representative of appellee agreed to contact her, upon receiving the death certificate, if there was any problem with insurance coverage of the loan, appellee was under a duty to notify her before proceeding further to obtain judgment. Appellee's actions undercut the efficacy of appellant's notice of the proceeding.

Furthermore, after entry of the default judgment, appellant acted promptly, filing her motion to vacate within eight days. There is no contention that she has acted in bad faith. And, there can be no prejudice to appellee from vacation of the default judgment since its claim will survive, there is no evidence that appellee will be subordinated to other claimants against appellant's assets, and, in any event, appellee should not be able to claim prejudice when its own conduct substantially contributed to the default.

There remains the question whether appellant presented a *prima facie* adequate defense, which this court has interpreted to mean "a meritorious defense, something more than a bald allegation, but certainly something less than a pretrial hearing on the merits." *Clark, supra,* 418 A.2d at 1043. The movant, therefore, does not have to "make a showing as strong as that of 'likely to succeed.'" *Id.*

Throughout, appellant has alleged a defense of life insurance coverage of the loan—coverage by an affiliate of, and paid for through, appellee. Note 1 *supra.* At the May 27, 1982, hearing on the motion to vacate, the trial court addressed the merits of the complaint and the proffered defense, agreeing with appellee's counsel after reviewing the loan documents that the insur-

---

**3.** According to Super.Ct.Civ.R. 12–I(j), a motion to vacate a default judgment must also comply with the requirements of Super.Ct. Civ.R. 55(c), which provides: "For good cause shown, and upon the filing of a verified answer setting up a defense sufficient if proved to bar the claim in whole or in part, the Court may set aside an entry of default. . . ." Appellant complied with this rule by filing a verified answer.

ance covered only the period of the credit—through the maturity date in July 1978—and not the entire period that the balance of the loan remained unpaid, as appellant in good faith had claimed.

In a legal document case such as this, in contrast with a fact-oriented case such as *Clark, supra,* the court's evaluation of whether the proffered defense is *prima facie* adequate ("meritorious") may be relatively simple, leaving little, if any, room for a movant to prevail when the document cited against her is clearly authentic, is not alleged to be fraudulent, and is adverse to her legal position. But in this case, for reasons we shall enumerate, appellant did not have a fair opportunity to present a defense on May 27.

First, appellant did not have notice that appellee intended to seek judgment on the complaint, let alone clear notice—before the hearing on her motion to vacate—that appellee had rejected her credit life insurance defense.[4] Indeed, appellant's uncontradicted testimony shows that appellee's conduct was positively misleading. Under appropriate circumstances, a credit life insurance defense will be adequate. Thus, because appellant did have such insurance coverage and a good faith belief in that defense, without clear contradiction by appellee, it appears that appellee lulled appellant into assuming no need for counsel, relying on her original answer to the complaint, and preparing less than she otherwise might have for the hearing on her motion to vacate. As a result, appellant, appearing *pro se* against appellee's counsel, was not in a position to argue her case beyond her basic, on-the-spot explanation.

Second, obviously perplexed once the May 27 hearing began, appellant asked if the court would "let my son-in-law help me. I'm kind of confused with this." The court was sensitive to her concern but fended off the request: "If you need help, I'll be glad to let him help you, but you're doing fine."

Under those circumstances, the court expected too much of appellant. The court should have afforded her an opportunity for the requested assistance to make her best case or suggested a continuance so that she could obtain counsel.

On December 16, 1982, in denying appellant leave to amend her answer and in reinstating the default judgment after correcting the erroneous docket entry that the judgment had been vacated on May 27, the court stated that appellant "had every opportunity to present her case or to obtain a continuance in order to consult counsel" if she had not been prepared to go forward on May 27. This is belied by the record. In light of appellant's request for her son-in-law's help on May 27 when she became confused—a request which the court parried while expressing confidence that appellant was "doing fine"—we perceive no reason why a *pro se* appellant should have been expected to protest further by requesting a continuance to consult counsel.

By the time of the December 16 hearing, the court had before it an amended answer, prepared by appellant's newly-retained counsel, presenting additional defenses of the statute of limitations, laches, and voidness of the note for failure to comply with applicable laws. Thus, in addition to the court's questionable basis for denying the motion to vacate on May 27 without granting appellant's request for assistance or *sua sponte* granting a continuance, the motion for leave to file an amended answer clearly reflected that appellant, assisted by counsel, had proffered several defenses that should have triggered the court's reconsideration.

### III.

In summary, appellant at all times has acted promptly to vacate the default judgment and has proceeded in good faith. We find no prejudice to appellee if the default judgment is vacated. As to the other applicable criteria, we perceive problems with

---

4. Appellee's eventual return of the death certificate, note 2 *supra,* did not necessarily give her

such notice.

the trial court's evaluation of appellant's notice of the proceedings and of her proffer of a defense: (1) appellee failed to notify appellant of its rejection of her insurance defense before obtaining a default judgment or even before the May 27, 1982, hearing on the motion to vacate; (2) the trial court failed on May 27 to recognize appellant's plight as to notice and failed to grant appellant's request for assistance (or at least to perceive her need for a continuance) to present a defense that in some circumstances would be unquestionably valid; and (3) the court refused to reconsider the motion to vacate on December 16, 1982, when appellant, with legal assistance, proffered several defenses. Under these circumstances, the trial court abused its discretion by confirming its denial of the motion to vacate without scrutinizing the proffered defenses on December 16, 1982.[5]

Accordingly, we reverse and remand the case with an order that the trial court rehear appellant's motion to vacate the default judgment, taking into account the defenses proffered in her motion for leave to file an amended answer.

*Reversed and remanded.*

---

5. Because we consider the entire course of these proceedings, we need not resolve whether, under the circumstances, the life insurance defense proffered on May 27, 1982, was *prima facie* adequate within the meaning of *Clark,* *supra.* That question becomes irrelevant because of our conclusion that appellant did not have a fair opportunity, given appellee's conduct, to present a thoroughly prepared defense.