Carolyn WALKER, Appellant,

v.

Byron Albert SMITH, Jr., Cecil R. Smith, Michael F. Smith, Appellees.

No. 83–940.

District of Columbia Court of Appeals.

Argued Aug. 28, 1984.

Decided Oct. 24, 1985.

Phyllis Thompson, Washington, D.C., for appellant. Alan Anderson, Washington, D.C., was on brief, and Lawrence E. Williams, Jr., Washington, D.C., entered an appearance for appellant.

William Daniel Sullivan, Washington, D.C., for appellees.

Before MACK and TERRY, Associate Judges, and REILLY, Chief Judge, Retired.

MACK, Associate Judge:

This appeal is taken from an order of the Landlord and Tenant Branch of the Superior Court denying appellant's motion to vacate a default judgment which granted possession of the house occupied by appellant to appellees. On this record, or perhaps more accurately because of the lack of an adequate record, we find that the trial court abused its discretion in denying ap-

pellant's motion to vacate the default judgment.

The record shows that on June 27, 1983, appellees filed a complaint for possession in the Landlord and Tenant Branch, alleging that appellant was a tenant at sufferance, wrongfully in possession of premises owned by appellees. Appellant was summoned to appear on July 15, 1983.

On July 15th appellant failed to answer the first call at 9:00 a.m. and a default judgment was entered against her. Appellant appeared before the court later that morning without counsel and asked that the default judgment be vacated. At that time appellant told Judge Eilperin that the foreclosure sale of her house on May 5, 1983, under which appellees claimed title, was fraudulently obtained and that she had been advised by Law Students in Court representatives that her defense was a plea of title. She represented that the matter was a complex one and asked for a continuance of four weeks. The court vacated the default judgment and granted a two-week continuance so that appellant could obtain counsel. The court, at appellees' request, and over objection of appellant, ordered that appellant make protective order payments. The payments were set at $590 per month beginning on July 22nd [1] and due thereafter on the 15th of each month. When appellant stated that she lacked funds, the court answered that she could come back with counsel and seek modification of the order.

On July 26, 1983, appellees filed a motion for judgment for failure to comply with the protective order. Appellant was then served with a notice that the motion would be heard on August 2, 1983.

Appellant failed to appear on the July 29th return date (set as a result of the two-week continuance). Appellees thereupon withdrew their July 26th motion for judgment for failure to make the protective order payment and, instead, requested a default judgment. The default judgment was entered by Judge Washington.

Appellant appeared in court, again without counsel, on August 2nd (the date of the hearing on appellees' motion for judgment on the protective order) and asserted that she had understood that to be her return date. She discovered at that time that a default judgment had been entered against her, and that a writ of restitution had been issued. At a hearing before Judge Doyle, appellant asked that the writ be stayed. She represented that she was the owner of the property, that she had been unable to obtain student counsel because of the complexity of her case, and asked for appointment of counsel. Judge Doyle, concerned that he was unable to provide counsel, stayed the writ of restitution until August 19th and ordered appellees to show cause at that time why the default judgment should not be vacated.

On August 11th appellees appeared before Judge Bowers, where (it is represented) they requested that their motion for judgment for failure to comply with the terms of the protective order be reinstated and heard on August 19th, should the July 29th default judgment be vacated.[2]

On August 19th, the parties appeared before the court together for the first time since July 15 for the purpose of a hearing on the show cause order as to why the July 29th default should not be vacated. At that time Judge Warren King heard a truncated history of the case from each of the parties. Appellant, asked about her attorney, represented that she had not been able to retain counsel until August 9th, that counsel was on vacation and would return the first week in September. When appellant requested that she not be asked to argue further without counsel, the following transpired:

THE COURT: Well, Ms. Walker, this matter is just delayed, delayed, delayed.

---

1. The July 22nd protective order payment was prorated at $304.

2. The docket entries are unclear.

You were supposed to make protective order payments; you did not.

MS. WALKER: Your Honor, I think you have

THE COURT: I'm sorry, Ms. Walker. I am going to let the default remain. I am also going to enter judgment on the grounds protective order payments have not been paid.

MS. WALKER: Your Honor, I'm confused. Is Mr. Smith getting possession of my property because I didn't pay three hundred and four dollars?

THE COURT: No, ma'am, three hundred four dollars plus whatever the August payment was.

MR. SMITH: Five hundred and ninety dollars, Your Honor.

THE COURT: Plus the fact that there is a default judgment. I intend to leave that default standing.

MR. SMITH: Your Honor, and the writ will become live—the stay will be vacated and the rent will become live immediately.

THE COURT: That's right. You have judgment right at this moment, at this time.

MR. SMITH: Thank you, Your Honor.

MS. WALKER: Your Honor, may I ask the Court a question?

THE COURT: Yes, go ahead.

MS. WALKER: Is it usual practice that a written statement by one party is to be answered by an oral statement by the other party? I have here a complaint that alleges that he's my landlord. It says nothing else. Now I came in and said, he's not my landlord, and I would like an opportunity to present the facts showing that. I am indigent; I—

THE COURT: You've had the opportunity. You've had six weeks of opportuni-

ty, Ms. Walker. You haven't presented your facts. The landlord has—he has judgment, ma'am.

MS. WALKER: When I came in on— when I came in on the 2nd, I did bring the papers showing—

THE COURT: I'm sorry, ma'am. I've ruled on the point. Thank you.

MS. WALKER: Thank you, Your Honor.

THE COURT: Thank you.

[Thereupon the proceedings were concluded.]

■ A writ of restitution was subsequently issued and eviction was scheduled for August 24, 1983. On the 24th, appellant, with counsel, appeared before Judge Salzman to ask for reconsideration of the order entered on August 19th. That motion was denied and the court, noting that there must be an end to litigation sometime, refused to stay the writ of restitution. A timely notice of appeal was filed on August 25, 1983. On that same day this court temporarily stayed the writ on appellant's motion for stay of the writ pending appeal. On September 20, 1983, the motion for stay of the writ pending appeal was denied.[3] Reconsideration of the order denying the stay of the writ was denied on October 13, 1983.

The narrow issue before this court is whether the trial court abused its discretion in denying appellant's motion to vacate the July 29th default judgment. More specifically, the issue is whether the court's failure, in light of Super.Ct.Civ.R. 60(b)(1), to consider the reasons behind appellant's motion to vacate was an abuse of discretion. We hold that it was.

■ We adhere to the strong judicial policy favoring adjudication on the merits of a

---

3. During argument before this court it was disclosed that appellant did vacate the premises at issue. Appellant's removal from the premises does not, however, render this case moot. While voluntary surrender of premises in such a dispute renders the case moot, *Goodwin v. Barnes,* 456 A.2d 1246 (D.C.1983), the issue of possession is not moot when the tenant does not voluntarily leave the premises. *Zanakis v. Brawner Building, Inc.,* 377 A.2d 67 (D.C.1977); *see also Hohensee v. Manchester,* 102 A.2d 461 (D.C.), *cert. denied,* 348 U.S. 864, 75 S.Ct. 89, 99 L.Ed. 681 (1954) (case not moot where issue between parties—right to possession—remains undecided).

case. *Newborn v. U.S. Life Credit Corp.*, 473 A.2d 389, 391 (D.C.1984); *Cobb v. Cobb*, 462 A.2d 461, 463 (D.C.1983); *Jones v. Hunt*, 298 A.2d 220, 221 (D.C.1972); *Brown v. Cooke*, 219 A.2d 256, 257 (D.C. 1966). We are not unmindful of the fact that the decision to grant or deny a motion to vacate a default judgment is within the sound discretion of the trial court. *Clark v. Moler*, 418 A.2d 1039, 1041 (D.C.1980); *Dunn v. Profitt*, 408 A.2d 991, 992 (D.C. 1979); *Barr v. Rhea Radin Real Estate, Inc.*, 251 A.2d 634 (D.C.1969). But we are also mindful of the fact "that exercise of such discretion implies conscientious judgment which takes into account the law and the particular circumstances of the case." *Manos v. Fickenscher*, 62 A.2d 791, 792 (D.C.1948).

Rule 60(b)(1)[4] delineates six different categories[5] which support the vacation of a final judgment, order or proceeding.

> (b) *Mistakes; inadvertence; excusable neglect; newly discovered evidence; fraud, etc.* On motion and upon such terms as are just, the Court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: (1) Mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment.

In order to ascertain whether the facts of a case fit within one or the other of these categories, it is incumbent upon the trial court to conduct a proper inquiry into the factors behind a party's motion for dismissal of default. *Newman v. Universal Enterprises, Inc.*, 129 A.2d 696, 700 (D.C.1957). To do less would be to too heavily tip the scales in favor of the need for finality in litigation. *Dunn v. Profitt, supra*, 408 A.2d at 993 ("the judge must weigh two competing considerations: a strong judicial policy favoring a trial on the merits versus the important need for finality in litigation"). The failure to balance the need for finality against the right to be heard can lead to grave consequences. The risk is intensified in cases such as this when one of the parties is unrepresented by counsel.

We have enumerated specific factors to be considered in the balancing process: did the movant (1) have actual notice of the proceeding; (2) act in good faith; (3) present a prima facie adequate defense; and (4) act promptly? *Jones v. Hunt, supra*, 298 A.2d at 221; *see also Dunn v. Profitt, supra*, 408 A.2d at 993. These factors were not considered by the trial court.

We hold that the trial court should have conducted an inquiry into the reasons behind appellant's motion to dismiss the July 29th default judgment. Its failure to do so was an abuse of discretion, and this court has consistently held that even a slight abuse of discretion may lead to reversal. *Milton Properties, Inc. v. Newby*, 456 A.2d 349, 353 (D.C.1983).

Appellees contend, however, that there is no need for remand with respect to the default judgment because of the trial court's "spreading upon the record" an al-

---

**4.** In their brief, appellees mention Super.Ct. Civ.R. 55(c). Brief for Appellee at 9. Rule 55(c) is inapplicable to this case as it applies when a party has failed to plead. R. 55(a). Appellant indicated she wished to assert a plea of title.

**5.** Sections (b)(1) and (b)(6) are mutually exclusive. *Clark v. Moler, supra*, 418 A.2d at 1041 (citing *Ohio Valley Construction Co. v. Dew*, 354 A.2d 518, 521 n. 6 (D.C.1976)).

ternative and admittedly "superfluous" judgment against appellant for her failure to make protective payments. Even if this issue were properly before this court or the trial court, in view of the existence of the default judgment, appellees would be in no better position. There is nothing in the record to show that the trial court gave any consideration to the extent of noncompliance with the protective order[6] or the reasons for the noncompliance. *See Davis v. Rental Associates, Inc.,* 456 A.2d 820, 826 (D.C.1983) (en banc). Moreover, in the absence of the traditional landlord-tenant relationship, with privity of contract, the validity of this protective order is open to serious question. *See Nicholas v. Howard,* 459 A.2d 1039 (D.C.1983) (new owners not entitled to money judgment for rent arrearages since occupier in adverse possession was "squatter" who may be liable in a suit for ejectment for damages for use and occupation).

We reverse and remand with instructions to conduct a proper inquiry to determine whether the appellant is entitled to relief on any ground enumerated in Rule 60(b).

*So ordered.*

REILLY, Chief Judge, Retired, dissenting:

With all deference to my colleagues, I am unable to perceive any abuse of discretion in the refusal of the motions court to set aside the default judgment. Just prior to the colloquy quoted in the text of the majority opinion, the court had listened patiently while both parties explained their positions in the earlier proceedings. The court made it plain to appellant that her failure to comply with a protective order was a major factor in its ruling. But the majority opinion now brushes aside this aspect of the case asserting that the prior

entry of such a protective order in the absence of a formal landlord-tenant relationship was "open to serious question," after having observed that "there is nothing in the record to show that the trial court gave any consideration to the *extent of noncompliance* with the protective order or the *reason* for noncompliance." (Emphasis supplied.)

Such observation is not borne out by the transcript. The record quite clearly demonstrates the "extent of noncompliance"— there was *no* compliance. Appellant conceded as much and also gave her reason.

> THE COURT: Well, Mr. Smith claims that you have not made your protective order payments. Is that right?
>
> MS. WALKER: Yes, Your Honor, [but] I claim that I am the owner, that Mr. Smith has no right to the property....

The asserted questionability of the protective order, moreover, does not square with the controlling authorities in this jurisdiction. It is true that no actual or implied agreement existed between the parties which established a landlord-tenant relationship, but I cannot understand why this aspect of the matter throws any doubt upon the authority of the court to enter a protective order. According to appellant herself, she was an owner of a house who at some unspecified time failed to make payments required by her mortgage (deed of trust) note, but continued to occupy the house after it was sold at foreclosure, despite a 30-day notice to quit. Under D.C. Code § 45–222 (1981), she thereby became a "tenant at will," and as *Nicholas v. Howard,* 459 A.2d 1039, 1041 (D.C.1983), cited by the majority, recognized subject to "the expeditious ejectment procedures of the Landlord and Tenant court available to the new owners." To be sure, *Nicholas* did

---

**6.** There is a suggestion in the record that appellant had an agreement with her mortgagee whereby her mortgage payments were suspended. As her failure to make payments lay at the base of the foreclosure action at which appellees purchased appellant's house, the question as to the existence of the agreement is inter-

twined with the issues raised in this case. The suit between appellant and her mortgagee relative to this issue is pending in the Civil Division of the Superior Court (*Walker v. Independence Federal Savings & Loan Ass'n,* C.A. No. 5293–83).

hold that such a tenancy did not create an obligation to pay rent, but as the plaintiffs in the case before us sued for possession, not back rent, this holding plainly did not detract from the power of the Landlord and Tenant Court to fashion an equitable remedy like a protective order to prevent one party from placing the other at a severe disadvantage (*i.e.* deprivation of property without compensation) during the period of litigation. *Davis v. Rental Associates, Inc.*, 456 A.2d 820 (D.C.1983) (en banc); *Mahdi v. Poretsky Management, Inc.*, 433 A.2d 1085 (D.C.1981).

In the *Davis* case, the en banc court held that failure to deposit payments required by a protective order into the court registry justified the entry of judgment against the tenant. It is impossible to read *Davis* as being limited to possessory actions for property rented to the occupant, for the opinion, in summarizing the leading cases, cited *Thompson v. Mazo*, 137 U.S.App.D.C. 221, 421 F.2d 1156 (1970), where a defendant in a possessory action interposed a plea of title—the very defense which appellant here claimed orally. In that case, the appellate court in reversing an order of the trial court requiring the posting of a $3,000 bond, held that an appropriate security order should merely have required monthly payments into an escrow account. The *Davis* opinion quoted with approval the following direction on remand from the federal appeals court:

> The guiding principle of the court is of course to arrive at a reasonable monthly payment, which will, at one and the same time, impose a fair obligation on the defendant, permit the case to be heard on the merits, and assure the plaintiff, that if he wins he will, having been denied interim possession, at least receive reasonable intervening rent.

*Davis, supra* at 825.

This is precisely what Judge Eilperin sought to accomplish when on July 15th he set aside the default judgment entered against appellant when she failed to appear on the morning the case was set for trial.

She later came to court to ask vacation of the judgment and a continuance in order to obtain counsel. In granting this request in part—he limited the continuance to two weeks—he formulated a protective order based on his estimate of a fair monthly payment. But appellant failed to appear on the return date. Although obtaining a reprieve from Judge Doyle later after a second default judgment was entered, appellant was still without counsel on August 19th—almost five weeks after gaining postponement from Judge Eilperin.

In my opinion, her repeated disregard of dates set by the various judges in the case, her purported reliance upon counsel who were never available, and her deliberate refusal to make any protective order payments, fully justified the final judgment of the court.