(December 9, 1986)

■ IRWIN W. IROFF, Respondent, v ISHA IROFF, Appellant.— Order, Supreme Court, New York County (Greenfield, J.), entered February 28, 1985, which granted the motion of plaintiff-respondent to confirm the Referee's report and denied the motion of defendant-appellant to vacate a prior order of publication, dated July 10, 1980, and a default divorce judgment entered November 25, 1980, reversed, on the law and the facts and in the exercise of discretion, and the motion by defendant-appellant to vacate the order of publication and the default judgment is granted, the motion by plaintiff to confirm the Referee's report is denied, without costs.

The parties were married in August 1961 and have two adult children, Marc and Brad. In December 1977, the husband left the marital home in Queens and moved to an apartment in Manhattan. After Marc joined the Army and Brad went to live with his father, the wife regularly telephoned Brad at home, and sometimes spoke with his father. The husband obtained an order in Queens County Family Court awarding him child support. A notice of appeal was filed and served by new attorneys for the wife. The Family Court issued an order for the wife's arrest when she failed to appear for a hearing and to produce bank records for custodial accounts for the children which the husband alleged contained $80,000. During one of many subsequent conversations the husband warned the wife that a warrant had been issued for her arrest. On or about November 16, 1979, in an effort to locate assets held by the wife in hidden bank accounts, the husband's attorney signed, and effected service of, a subpoena for bank records belonging to, *inter alia,* the one of the wife's two sisters who had a close relationship with her. Approximately one month later he also served a motion to dismiss the appeal from the Family Court order.

On December 28, 1979, plaintiff signed a summons and verified complaint for a divorce from his wife on the grounds of cruel and inhuman treatment. Upon the expiration of the lease for the marital residence that same month, the wife

moved to a studio apartment 2½ blocks away, without leaving a forwarding address. The husband facilitated an ongoing relationship between Brad and his mother by driving Brad to the neighborhood of the former marital residence.

In July 1980, plaintiff made a motion, ex parte, for an order authorizing service of the divorce papers by publication, essentially alleging that defendant had gone "underground" and "disappeared." His supporting affidavit averred, *inter alia:* "Both my sons indicate to me that they are unable to tell me the whereabouts of the defendant * * * I have made a diligent effort to locate the defendant but I have been unable to find out where she lives, where she works, or where she may be served."

The plaintiff also indicated that defendant had left no forwarding address with the United States Post Office and that a search of the records of the New York State Department of Motor Vehicles revealed that she had not changed her address. In a carefully worded affirmation, the husband's attorney stated that he had telephoned the only relative the husband advised him the defendant had, to no avail. He further indicated: "I had long and careful conversations with Irwin Iroff in order to obtain more information to attempt to locate the proposed defendant * * * Mr. Iroff told me * * * [t]he only people she had any relationship with was her sister and brother-in-law above named. He told me that Isha Iroff had completely cut herself off from her children and that she refused to give her children her address. She met with her son Brad Iroff on one occasion by calling him at his home and arranging for a rendezvous on the street * * * Isha Iroff went underground * * * She does not communicate with her sister who was the only person she previously had any real relationship with * * * Everything possible has been done to locate Isha Iroff. No stone has been left unturned. She has disappeared".

By order entered on July 11, 1980, the court (Greenfield, J.) granted the application, and issued an order directing publication in the New York Law Journal with the accompanying mailing pursuant to CPLR 316 (b) to defendant in care of Zobeda Bann, the named sister. The action was commenced by publication from July through August 1980. The envelope addressed to Zobeda Bann was not marked to indicate its contents, and was returned with the seal unbroken with a handwritten note "Return to Sender. Do Not send Mail For Isha Iroff at this Address." A default judgment of divorce in favor of plaintiff was entered on November 25, 1980. Two and

one-half years later, plaintiff convinced Marc to reveal the defendant's address. On or about April 11, 1983, defendant learned of the final judgment.

By order to show cause dated April 15, 1983, defendant moved to vacate the order of publication and the default judgment on the grounds that plaintiff had failed to exercise due diligence and had concealed facts in obtaining the order of publication. She also alleged excusable default and the existence of a meritorious defense to the divorce action. The court held the motion in abeyance, and referred the issues of whether plaintiff fraudulently stated he was unable to locate defendant and whether defendant was purposefully evading service to a Special Referee to hear and report.

A hearing was held before the Special Referee on February 21, 22, April 25, and September 6, 1985, at which testimony was given and evidence was introduced. The evidence established the foregoing facts. Brad and Koraisha Ramzaan, another sister of the wife, were key witnesses for defendant. Brad testified that, while he was living with his father in 1978 and 1979, his mother had telephoned approximately once a week and had spoken not only to him, but to her husband. Moreover, in late 1979 and in 1980, his father had driven him to visit his mother in Queens in the vicinity of the former marital residence, but would drop him off several blocks from his mother's new residence. He told his father that he was going to visit his mother at her home. Koraisha Ramzaan, the defendant's sister, testified to her close relationship with defendant at all times here relevant, and that the two had lived across the street from one another during the marriage for 12 years. The defendant, Koraisha Ramzaan, and Brad stated that defendant was estranged from Zobeda Bann, the sister in whose care the mailing under CPLR 316 had been addressed.

The defendant further testified on her own behalf that she had evaded service of judgment creditors and of the Family Court arrest warrant. She admittedly had encouraged her sons and their friends not to reveal her address. However, plaintiff never mentioned his intention to file for divorce during his conversations with her.

As proof that defendant was purposefully evading service, plaintiff adduced into evidence a letter from defendant to Brad dated September 21, 1980, stating in pertinent part: "I told [your father] that I have not spoken to you in a long time because I am angry with you. This way * * * you can say you

do not know how to get in touch with me because you do not know where I live, and I have not yet called you before you left for school."

The plaintiff testified that he believed Brad met his wife at locations other than her home and that he honestly believed Koraisha, the sister with whom she maintained a close relationship, had left the country due to immigration problems. He admitted that his wife would call to speak to Brad, and if Brad were not at home would leave a message to "have him call." Plaintiff's attorney testified that he was unaware of the existence of Koraisha. He further testified that he sent copies of the divorce papers to defendant's Family Court trial attorney, but not to her new attorneys on the appeal, because there was no reason to believe they knew her whereabouts.

In a report, dated December 12, 1984, the Special Referee found there was no fraud because Brad concealed defendant's address, plaintiff had no reason to believe the attorneys handling defendant's appeal were cognizant of her whereabouts, and plaintiff honestly believed that Koraisha could not be used to locate her. The Referee also determined, in reliance upon the purported acknowledgement by defendant in the September 1980 letter, that she purposefully evaded service. By order, entered on February 22, 1985, the court confirmed the report and denied the motion by defendant to vacate the order of publication and the default judgment. We disagree and reverse to vacate the order of publication and the default judgment.

Domestic Relations Law § 232 (a) authorizes service by publication pursuant to CPLR 315, with an accompanying mailing (CPLR 316 [b]) in the event service cannot be made with due diligence by another prescribed method. This includes possible methods of expedient service under CPLR 308 (5). "Service by publication * * * [is] a last resort since it is really more symbolic than anything else." (Scheinkman, 1982 Practice Commentary, McKinney's Cons Laws of NY, Book 14, 1986 Supp Pamph, Domestic Relations Law C232:3, p 23.)

The plaintiff demonstrated on this record that he exercised due diligence in attempting to serve defendant personally. However, he clearly practiced deception, if not fraud, upon the court in moving for the order of publication. The plaintiff concealed the existence of one individual and other circumstances which would have permitted the court to direct the use of expedient service.

Had plaintiff advised the court concerning his telephone

conversations with defendant and her prearranged meetings with Brad, the court could have ordered Brad to deliver the envelope containing the summons and complaint to his mother. Further, his statement in his affidavit that her estranged sister was the only person with whom his wife previously had any relationship was patently false. He failed to substantiate that his honest belief that her other sister had left the country was based upon anything more than speculation and conjecture. Any doubt could have been resolved by simply telephoning her using the number listed in the telephone directory. Contrary to plaintiff's contention, Koraisha knew where defendant could be found, and could have conveyed the divorce papers to her. Since plaintiff did not advise the court of her existence, it had no opportunity to direct a mailing of the divorce papers in care of Koraisha.

Yet a third possibility, which plaintiff either overlooked inadvertently or concealed from the court in obtaining the order of publication, was service by mail to defendant in care of the attorneys who handled the appeal in the Family Court matter. The plaintiff's attorney served these attorneys with a motion by plaintiff to dismiss the appeal approximately two weeks before plaintiff signed the divorce papers. Yet he forwarded a copy of the divorce papers only to the former trial attorney. The plaintiff should have advised the court of these three alternate means of service. All were better calculated than publication to afford her notice.

The defendant's uncontroverted testimony that she knew nothing of plaintiff's efforts to commence a divorce action established that she did not willfully avoid service of the papers in the divorce action. Her admitted concealment of her address from plaintiff and evasion of service of papers from judgment creditors and of the arrest warrant are not determinative. The Referee placed undue emphasis upon the September 1980 letter in reaching a contrary conclusion.

Nor did defendant deliberately default in the divorce action. The record reflects that she did not learn about the action until 2½ years after the final judgment. She immediately instituted proceedings to vacate the order of publication and the default. In view of the liberal policy favoring the opening of default judgments generally (*Lipsig, Sullivan, Mollen & Liapakis v Shamy*, 86 AD2d 520 [1st Dept 1982]), particularly in matrimonial actions, even in the absence of excusable neglect (*Antonovich v Antonovich*, 84 AD2d 799 [2d Dept 1981]), we conclude that the court erred in denying the motion to vacate the order of publication and the default judgment.

Concur—Murphy, P. J., Sandler, Sullivan, Rosenberger and Wallach, JJ.