**Maria Elena CRUZ, Appellant,**

v.

**Roberto P. SARMIENTO, Appellee.**

**No. 97–FM–1060, 97–FM–1180.**

District of Columbia Court of Appeals.

Argued Nov. 12, 1998.
Decided Sept. 2, 1999.

---

Cameron C. Powell, with whom Sybil Meloy, Washington, DC, was on the brief, for appellant.

Michael S. Murphy, for appellee.

Before TERRY, FARRELL, and REID, Associate Judges.

TERRY, Associate Judge:

This is an appeal from the denial of a motion to set aside a default divorce judgment obtained by appellee Sarmiento. Appellant Cruz contends that the trial court abused its discretion when it refused to reopen the case, arguing that the judge who originally entered the default judgment erred when she granted Mr. Sarmiento's motion for substituted service by publication. According to Ms. Cruz, Mr. Sarmiento's motion was deficient because it lacked information required by D.C.Code § 13–338 (1996) and by our decision in *Bearstop v. Bearstop*, 377 A.2d 405 (D.C.1977). For that reason, she maintains, the service by publication was invalid, and as a result the default judgment was void. Ms. Cruz also contends that the trial court erred when it ruled that certain discussions between Mr. Sarmiento and his attorneys were protected by the attorney-client privilege. We hold that the first trial judge erred in granting the motion for substituted service, and that the second trial judge therefore abused his discretion when he denied Ms. Cruz's motion under Super. Ct. Dom. Rel. R. 60(b)(4) [1] to vacate the default judgment and reopen the case. We therefore reverse the denial of Ms. Cruz's Rule 60(b)(4) motion and remand the case for further proceedings.[2]

I

### A. The Default Judgment and the Rule 60(b)(4) Motion

On December 14, 1992, appellant Cruz and appellee Sarmiento separated after six years of marriage when Ms. Cruz and her children [3] moved out of the couple's home on Park Road, Northwest. Approximately one month later, they met to sign a separation agreement disposing of their marital property. Some time thereafter Ms. Cruz and her children moved into a house on Eleventh Street which she and Sarmiento jointly owned. The parties met again on July 20, 1993, to cross-deed certain property. At that meeting Mr. Sarmiento executed a promissory note for $20,000, payable to Ms. Cruz, which would become due at the time he sold the Park Road house .[4] In February of the following year, unable to pay the mortgage because of a lack of work as a baby sitter, Ms. Cruz and her children moved out of the Eleventh Street house and went to live with friends.

The legal proceedings underlying this appeal began several months later when Mr. Sarmiento filed a complaint for absolute divorce on September 29, 1994. Among other things, the complaint alleged

1. Because Domestic Relations Rule 60(b)(4) is identical in all material respects to the corresponding civil rule, Super. Ct. Civ. R. 60(b)(4), we shall not differentiate between the two in this opinion.

2. Given our holding that the trial court abused its discretion in denying the Rule 60(b)(4) motion, we do not reach the privilege issue. Likewise, we do not address Ms. Cruz's additional argument that the default

judgment should be set aside under Rule 60(b)(3).

3. These were children from an earlier marriage. Ms. Cruz and Mr. Sarmiento did not have any children together.

4. According to Ms. Cruz, Mr. Sarmiento sold the Park Road house in November 1994, but he has not paid her the $20,000 as required by the promissory note.

that the parties had no real or personal property to be distributed by the court. After failing to serve Ms. Cruz with the summons and complaint during the ensuing months, Mr. Sarmiento filed a motion for substituted service by publication on January 9, 1995. To the motion Mr. Sarmiento attached his own affidavit cataloguing the various attempts he had made to locate Ms. Cruz and serve her with process.[5] Relying on the motion and the attachments, the court granted the motion and allowed Mr. Sarmiento to effect service by publication. On July 18, 1995, a default judgment of absolute divorce was entered for Mr. Sarmiento against Ms. Cruz. The decree reflected Mr. Sarmiento's representation that there were no property rights to be adjudicated between the parties.

Unaware of the default judgment, Ms. Cruz filed a complaint for absolute divorce on October 23, 1995. With respect to property, her complaint attacked the property settlement agreement as having been secured by fraud and duress, and asked that the court set aside the agreement and distribute the parties' property equitably between them. Despite being personally served, Mr. Sarmiento did not respond to the complaint, prompting the trial court initially to enter a default against him. That default was vacated on June 12, 1996, when Mr. Sarmiento appeared before the court. A few months later, on September 25, Ms. Cruz finally became aware of the earlier default judgment when Mr. Sarmiento's attorney contacted Ms. Cruz's attorney to inform her that Mr. Sarmiento planned to file a motion to dismiss the complaint based on the prior divorce decree. On October 3, two days after a copy of the earlier default judgment was finally sent to her attorney, Ms. Cruz filed a

motion under Rule 60(b)(4) to reopen the earlier case and consolidate it with her own case against Mr. Sarmiento, or in the alternative to set aside the default judgment.

### B. *The Hearing on the Motion*

The hearing on the Rule 60(b)(4) motion, held before a new judge, focused primarily on the sufficiency of Mr. Sarmiento's original motion for substituted service by publication and on evidence that several factual assertions in that motion and affidavit were incorrect. First, in both the motion and the affidavit, Mr. Sarmiento said that he had not had any contact with Ms. Cruz since they separated on December 14, 1992. It was established, however, that the parties had met on at least two occasions, once in January 1993 to sign the property settlement agreement and again in July 1993 to execute and deliver the promissory note. Ms. Cruz also testified that Mr. Sarmiento had visited her at the place where she was employed as a baby sitter and that she had called him when she moved out of the house on Eleventh Street. Mr. Sarmiento admitted that he had been in contact with Ms. Cruz "several times" after their separation. Second, the motion and affidavit listed Ms. Cruz's last known address as 1819 Nineteenth Street, Northwest, and stated that the property at that location was jointly owned by the parties. In fact, Ms. Cruz had not lived at that location since 1986, when she and Mr. Sarmiento had shared an apartment there after they were first married. Mr. Sarmiento admitted that he knew Ms. Cruz had not lived there since 1986, but he said he had put that address in the affidavit by mistake, relying on information he had obtained from motor vehicle records. The

---

**5.** In the motion and affidavit, Mr. Sarmiento recited the date on which the parties had separated, the last date of contact between the parties (which he said was the same as the date of separation), and the last known address for Ms. Cruz. He also stated that Ms. Cruz did not have a "last place of employment" because she worked as a baby sitter

and that he had attempted to discover Ms. Cruz's address by asking her brother and father where she was. In addition, Mr. Sarmiento listed other routine steps he had taken to find Ms. Cruz, including checking telephone directories, motor vehicle records, city directories, military establishments, and local jails.

hearing also revealed that shortly after Mr. Sarmiento had signed his complaint for absolute divorce but before he filed it, he received a call from Ms. Cruz's attorney, Lisbeth Kamborian, who told him that Ms. Cruz intended to challenge the property settlement. Despite that conversation, Mr. Sarmiento went ahead and filed his complaint without ever attempting to locate Ms. Cruz through her attorney.

Ms. Cruz's brother, José Roberto Cruz, testified that he had been in contact with Mr. Sarmiento on a weekly basis from August until November 1994, and that he had lived in the Eleventh Street house from August 1994 until April 1995 at Mr. Sarmiento's request. According to Mr. Cruz, Mr. Sarmiento asked him on numerous occasions if he had talked to his sister or if she had contacted him, but never asked where she was or how to contact her. Nor did Sarmiento ever mention that he was seeking a divorce and needed to serve her with the divorce complaint. Ms. Cruz confirmed in her own testimony that her brother and her father did not know where she was living after she moved out of the Eleventh Street house in April 1994. She said she was afraid of Mr. Sarmiento because she believed he had sexually assaulted her daughter.[6] She therefore had instructed her mother not to disclose her whereabouts to her brother or her father and had not contacted Mr. Sarmiento except through her own attorney.[7]

At the end of the hearing, the judge found that "both parties were trying to get into a position where one could not get in touch with the other and be the first to file a divorce case in court without the other knowing." Since both parties were difficult to find, the judge concluded that the previous judge who had entered the default judgment "appropriately permitted Mr. Sarmiento to proceed with service by publication." Moreover, the judge found that Mr. Sarmiento had no obligation to alert either the court or his attorneys that he had received a call from Ms. Cruz's attorney and no duty to tell her of his own planned filing. Finally, the judge ruled that Ms. Cruz had not presented clear and convincing evidence of fraud and concluded "that the divorce decree could not have been fraudulently obtained when the missing spouse was seeking a divorce in another action." He therefore denied the motion to set aside the judgment and reopen the original divorce proceedings.

## II

On appeal Ms. Cruz contends that the default judgment was void because there was no effective service of process and that the second judge therefore abused his discretion when he denied her Rule 60(b)(4) motion. We agree.[8]

The power of a trial court to vacate or otherwise relieve a party from a

---

6. Ms. Cruz also testified that sometime in June 1995 Mr. Sarmiento sent two men to her house on Eleventh Street offering her $50,000 to drop the sexual assault charges she had filed against him in April of that year. After she demanded to speak to Mr. Sarmiento, a different man came to her house about a week later and explained how Mr. Sarmiento proposed to obtain the $50,000.

7. Ms. Cruz said she had heard that Mr. Sarmiento had asked her brother about her because he "wanted to see me and to see how my little girl was."

8. Mr. Sarmiento argues that the Family Division of the Superior Court was not the proper place for Ms. Cruz to bring her claim, since she does not contest the divorce but, rather,

challenges the enforceability of the separation agreement and seeks to collect on a promissory note. He asserts that, because the separation agreement was not made a part of the divorce decree, Ms. Cruz's claim is a contract claim and should be brought before the Civil Division of the court, not the Family Division. This argument is totally without merit. There are no jurisdictional boundaries between divisions of the Superior Court. *See Clay v. Faison,* 583 A.2d 1388 (D.C.1990); *Andrade v. Jackson,* 401 A.2d 990 (D.C.1979). Moreover, Ms. Cruz sought an equitable distribution of jointly owned property, a function routinely performed by the Family Division in divorce proceedings. *See* D.C.Code § 16–910(b) (1997).

prior judgment or order, other than merely for clerical mistakes, is circumscribed by Rule 60(b). When a timely motion is made under the rule,[9] the decision to grant or deny it is committed to the sound discretion of the court. *E.g., Johnson v. Lustine Realty Co.,* 640 A.2d 708, 709 (D.C.1994); *Alexander v. Polinger Co.,* 496 A.2d 267, 269 (D.C.1985); *Union Storage Co. v.. Knight,* 400 A.2d 316, 318 (D.C.1979); *Westmoreland v. Weaver Brothers, Inc.,* 295 A.2d 506, 508 (D.C.1972). "In exercising its discretion, the trial court must choose 'what is right and equitable under the circumstances and the law' and state the reasons which support its conclusion." *Firemen's Insurance Co. v. Belts,* 455 A.2d 908, 909 (D.C.1983) . (citation omitted). However, because there is a strong judicial presumption favoring adjudication on the merits, this court carefully reviews a trial court's refusal to set aside a default judgment. *Johnson,* 640 A.2d at 709; *Clark v. Moler,* 418 A.2d 1039, 1041 (D.C.1980); *Dunn v. Profitt,* 408 A.2d 991, 992 (D.C. 1979); *see also Smith v. Alumax Extrusions, Inc.,* 868 F.2d 1469, 1472 (5th Cir. 1989) ("Rule 60(b) has been applied most liberally to judgments in default since the litigant in such cases has not had an opportunity to adequately present the merits of his case to the court") (quoted in *McMillan v. Choice Healthcare Plan, Inc.,* 618 A.2d 664, 668 (D.C.1992)). When reviewing the denial of a motion to vacate a default judgment, we consider "whether the movant had actual notice of the proceeding, acted promptly after learning of the default judgment, proceeded in good faith, and presented a *prima facie* adequate defense, and also whether the non-

moving party would be prejudiced." *Mewborn v.. U.S. Life Credit Corp.,* 473 A.2d 389, 391 (D.C.1984); *accord, e.g., Gill v. Tolbert Construction, Inc.,* 676 A.2d 469, 470 (D.C.1996); *McMillan,* 618 A.2d at 667; *Walker v. Smith,* 499 A.2d 446, 449 (D.C.1985).

"A default judgment entered in the absence of effective service is void." *McLaughlin v. Fidelity Security Life Insurance,* 667 A.2d 105, 107 (D.C.1995). Accordingly, a party may seek relief under Rule 60(b)(4) from a judgment unsupported by effective service (and therefore void) so long as the motion to set aside that judgment is made within a reasonable time.[10] Moreover, despite the discretion generally afforded to trial judges when ruling on Rule 60(b) motions, this court must reverse when confronted with a denial of a motion to vacate if it decides that the judgment is void for lack of sufficient service of process. *Id.* at 107; *see also Austin v. Smith,* 114 U.S.App.D.C. 97, 103, 312 F.2d 337, 343 (1962) ("under [Rule 60(b)(4) ], the only question for the court is whether the judgment is void; if it is, relief from it should be granted"). In such a case, the default judgment was entered without personal jurisdiction, and "[n]o amount of discretion can create jurisdiction where there is none." *McLaughlin,* 667 A.2d at 107.

District of Columbia law allows a plaintiff in a divorce proceeding to substitute publication for personal service of process on "a defendant who cannot be found and who is shown by affidavit ... to have been absent from the District for at

**9.** The rule provides that when challenges are based on certain grounds, *e.g.,* mistake, fraud, or newly discovered evidence, the trial court may vacate the judgment only if the motion is filed within one year from the date on which the judgment was entered. Challenges based on other grounds do not have similar time limits, but all Rule 60(b) motions must be made "within a reasonable time."

**10.** Rule 60(b) provides in pertinent part: "On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: ... (4) the judgment is void ...." *See McLaughlin, supra,* 667 A.2d at 107. In addition, "[a] judgment wholly null and void ... may be challenged at any subsequent time by the party against whom it has been rendered." *Roebuck v. Walker–Thomas Furniture Co.,* 310 A.2d 845, 847 (D.C.1973) (citations omitted).

least six months." D.C.Code § 13–336 (1995). Before a motion to substitute publication for personal service may be granted, however, "a summons for the defendant [must have] been issued and returned 'Not to be found,' and [the] absence [of the defendant] for at least six months [must be] proved by affidavit to the satisfaction of the court." D.C.Code § 13–338. Beyond these statutory requirements, this court has held that a plaintiff in a divorce proceeding must furnish certain additional information to the court before an order authorizing substituted service may be entered:

> (1) the time and place at which the parties last resided together as spouses; (2) the last time the parties were in contact with each other; (3) the name and address of the last employer of the defendant either during the time the parties resided together or at a later time if known to the plaintiff; (4) the names and addresses of those relatives known to be close to the defendant; and (5) any other information which could furnish a fruitful basis for further inquiry by one truly bent on learning the present whereabouts of the defendant.

*Bearstop v. Bearstop,* 377 A.2d 405, 408 (D.C.1977). This additional information is required because a plaintiff in a divorce proceeding inevitably has "a great deal of information concerning the defendant." *Id.*

In this case, Mr. Sarmiento's motion for service by publication failed to meet the third, fourth, and fifth *Bearstop* requirements.[11] His declaration in the motion that Ms. Cruz had "no 'last place of employment'" because her occupation was baby sitting is puzzling. Although, as a baby sitter, her place of employment may not be the usual office or shop, she must nevertheless work somewhere if she is employed. Baby sitters generally work ei-

ther in their own homes or in the homes of the families who hire them. If Mr. Sarmiento did not have information about any of Ms. Cruz's baby sitting jobs, then he should have said as much in his motion and affidavit. Moreover, since Ms. Cruz had apparently worked as a baby sitter while she was married to Mr. Sarmiento, it seems doubtful that he knew nothing about the people for whom she worked. Without any information about Ms. Cruz's employment available to the court, the third *Bearstop* requirement was not met.

As to the fourth *Bearstop* requirement, Mr. Sarmiento said in his motion that he had "attempted without success to discover [Ms. Cruz's] current address by asking friends and other people likely to know her whereabouts." However, he did not provide the names and addresses of those people, as *Bearstop* directs. That failure was not cured by his affidavit, which stated that he had asked Ms. Cruz's brother and father where she was, since he did not furnish their names and addresses either.

Finally, although he listed other routine steps he had taken to find Ms. Cruz, Mr. Sarmiento did not provide "any other information which could furnish a fruitful basis for further inquiry by one truly bent on learning" her present whereabouts, the fifth *Bearstop* requirement. The parties had been married for six years. One would reasonably expect that during that time Mr. Sarmiento had learned other information about Ms. Cruz which the court might have found useful in ascertaining her whereabouts. *See Cobb v. Cobb,* 116 Daily Wash. L. Rptr.1993, 2001 (D.C.Super. Ct. June 30, 1988) (husband and wife "inevitably developed many mutual friends and acquaintances" during their nineteen years of marriage). Because the motion for substituted service by publication fell far short of what *Bearstop* required, it was deficient on its face. We hold, therefore, that the

---

**11.** Ms. Cruz also argues that Mr. Sarmiento's unsupported claim that she had been absent from the District for more than six months was insufficient to prove that fact to the

court's satisfaction, as required by D.C.Code § 13–338(2). Because we hold that the motion was deficient under *Bearstop,* we need not decide this point.

first trial judge erred when she granted the motion, and that the second trial judge abused his discretion in denying the motion under Rule 60(b)(4), since the judgment was void for lack of proper service.

Moreover, the evidence at the hearing showed that Mr. Sarmiento had not made any realistic effort to find Ms. Cruz. He admitted in his testimony that the last known address for Ms. Cruz which he provided in both the motion and the affidavit was incorrect and that he knew it was incorrect at the time he signed those documents.[12] Mr. Sarmiento's purported reliance on the District of Columbia motor vehicle records for the Nineteenth Street address is also highly suspect. He knew that Ms. Cruz had not lived there since the two of them moved away from that address in 1986. He also knew that Ms. Cruz had more recently been living at a house they jointly owned on Eleventh Street.

Furthermore, Mr. Sarmiento asserted in his motion and affidavit that the last time he and Ms. Cruz were in contact was the day on which they separated, December 14, 1992. During the hearing, however, Mr. Sarmiento admitted that he and Ms. Cruz had seen each other "several times" after that date, including two scheduled meetings to sign the property settlement agreement and the promissory note. Ms. Cruz also testified that Mr. Sarmiento had visited her at her work on several occasions in the early part of 1993, indicating that he had the address of at least one of her employers. Yet he failed to provide the court with that address as required by the third element of *Bearstop* or to mention those later contacts as required by the second element.

With regard to the fourth *Bearstop* requirement, the hearing revealed that, although Mr. Sarmiento had asked some of Ms. Cruz's relatives about her whereabouts, he had not explained to them that he was seeking a divorce and wanted to serve the divorce complaint on her. José Cruz, Ms. Cruz's brother, testified that Mr. Sarmiento asked him on numerous occasions if he had spoken with or heard from his sister, but that Mr. Sarmiento never told him that he was looking for Ms. Cruz or that he had filed for a divorce. Mr. Sarmiento admitted that he never told either Ms. Cruz's brother or her mother that he was filing for divorce, nor did he make any attempt to deliver the complaint to Ms. Cruz through either of them. *Cf. Iroff v. Iroff,* 125 A.D.2d 197, 200, 509 N.Y.S.2d 316, 319 (1986) (court could have ordered parties' son to deliver the summons and complaint to the mother if the father had disclosed pre-arranged meetings between mother and son).

Finally, Mr. Sarmiento testified that he had received a call from Ms. Cruz's divorce attorney just days before he filed his own divorce complaint. However, despite his knowledge that Ms. Kamborian was Ms. Cruz's attorney and that Ms. Cruz intended to challenge the property settlement, he never attempted to serve Ms. Cruz through her attorney, nor did he ask Ms. Kamborian how he could contact Ms. Cruz to serve her. If Mr. Sarmiento had been "truly bent on learning the present whereabouts" of Ms. Cruz, he should have disclosed the telephone call to his lawyers and to the court as "other information which could furnish a fruitful basis for further inquiry." *Bearstop,* 377 A.2d at 408. The Supreme Court has held that "when notice is a person's due, process which is a mere gesture is not due process." *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 315, 70 S.Ct. 652, 94 L.Ed. 865 (1950). Mr. Sarmiento's efforts in this case, we conclude, amounted to little more than "a mere gesture."

Service by publication is generally regarded only as a formality and, in most cases, is not "reasonably calculated, under all the circumstances, to apprise interested

---

12. Mr. Sarmiento claimed that the misstatements were accidental. Nonetheless, the correct information was known to Mr. Sarmiento, and he failed to provide it to the court.

parties of the pendency of the action and afford them an opportunity to present their objections." *Id.* at 314, 70 S.Ct. 652 (citations omitted). Therefore,

[when] publication is utilized to obtain jurisdiction over an absent party, strict compliance with the constructive service statute is essential to bestow jurisdiction on the court. . . . Where such compliance does not occur, the court lacks jurisdiction, the decree is void, and the absent defendant has an equitable right to have the decree set aside.

*Cobb, supra,* 116 Daily Wash. L. Rptr. at 2001 (citations omitted). Although Mr. Sarmiento complied with the basic statutory requirements for substituted service by publication, that was not enough. *Bearstop* elaborates on the statutory requirements and demands the same strict compliance with its five-part test. Here Mr. Sarmiento not only provided insufficient information under *Bearstop,* but the information that he did provide was incomplete and inaccurate. On this record we conclude that he failed to exercise reasonable diligence to find Ms. Cruz.

Additionally, focusing on the factors we normally consider when reviewing the denial of a motion for relief from a default judgment, we note that there is no evidence that Ms. Cruz even knew about the default judgment before September 25, 1996. When she finally became aware of it, she immediately moved to have it set aside.[13] Moreover, Mr. Sarmiento has not shown that he would suffer any prejudice from the granting of the Rule 60 motion, since Ms. Cruz does not challenge the divorce decree itself, and Mr. Sarmiento has not remarried or otherwise changed his position in reliance on that decree. The trial court's failure to address any of these factors also amounts to an abuse of discretion. *See Johnson, supra,* 640 A.2d at 709; *Walker, supra,* 499 A.2d at 449.

**13.** "A showing of a meritorious defense is not required when a judgment is void." *Alexander, supra,* 496 A.2d at 269; *see also Colbert*

## III

The default judgment entered in Mr. Sarmiento's favor against Ms. Cruz was void for want of personal jurisdiction because the service by publication was invalid. Consequently, the failure of the trial court to vacate that judgment under Rule 60(b)(4) was an abuse of discretion. The denial of the Rule 60(b)(4) motion is reversed, and the case is remanded for further proceedings. We note, however, that Ms. Cruz has not challenged the actual decree of divorce. On remand, therefore, the trial court may reinstate the divorce (assuming neither party objects) and turn to the remaining issues in the case, including in particular the terms of the separation agreement, the enforcement of the promissory note, and other property-related matters.

*Reversed and remanded.*

Refrigeration Co. v. Edwards, 356 A.2d 331, 333 (D.C.1976).