**Gretel BEARSTOP, Appellant,**

v.

**William BEARSTOP, Appellee.**

**Margaret LEAK, Appellant,**

v.

**Robert H. LEAK, Appellee.**

**Mary E. CASH, Appellant,**

v.

**Benny J. CASH, Appellee.**

**Alicia M. RAMIREZ, Appellant,**

v.

**Omar RAMIREZ, Appellee.**

**Nos. 8765, 8774, 8775 and 8839.**

District of Columbia Court of Appeals.

Argued May 6, 1975.

Decided Aug. 24, 1977.

Edward E. Schwab, Washington, D. C., with whom Andrew T. Moss, Max Sampson, and Eleanor Yazbeck, Washington, D. C., were on the briefs, for appellants.

No appearances entered for appellees.

Frank F. Flegal, Washington, D. C., amicus curiae, by designation of the court.

Before KERN and GALLAGHER, Associate Judges, and REILLY, Chief Judge, Retired.

REILLY, Chief Judge, Retired:

These four appeals, consolidated for briefs and argument, challenge orders of the trial court in four separate divorce actions denying motions by the complainants to effectuate constructive service upon their husbands without regard to the publication requirements of Super.Ct.Dom.Rel.R. 4(j). This rule provides:

Service by Publication. Notices relating to proceedings in this Division of which publication is required shall be published in the Washington Law Reporter for the prescribed time in addition to any other newspaper or periodical specifically designated by the Court. If it is shown to the satisfaction of the Court that an undue hardship would be incurred by the requirements of this section it may order notices to be published in any other manner deemed appropriate within D.C. Code, 1967 Edition, § 13–340. . . .

In each of these cases, the complainants, who had been permitted to proceed in forma pauperis, based their motions on the ground that they lacked the financial means to comply with the requisite publication notices. They also filed affidavits averring that after the process servers had been unable to make personal service of the complaints and summons upon their respective husbands, they had made diligent but futile efforts to ascertain the whereabouts of such defendants. It should be noted that such a showing is a prerequisite to an order substituting publication for personal service under the provisions of D.C.Code 1973, § 13–338, when read in conjunction with § 13–340(b). *McIntyre v. McIntyre*, D.C.Mun. App., 176 A.2d 238 (1961); *Gardner v. Gardner*, D.C.Mun.App., 140 A.2d 179 (1958).

Accordingly, appellants argue that because they have submitted proof of indigency, the trial court erred in refusing to dispense with publication, and in failing to authorize the complainants to undertake some alternative method of service, *e. g.*, posting a notice in the courthouse and mailing it to the last known address.

Before reaching this issue, two preliminary questions must be decided. The first is whether this court has jurisdiction to entertain these appeals. The records do not show that any of the complaints have been dismissed. Thus, no order or judgment terminating the pending litigation in any of these cases has been entered. It has been held, however, that the term "final order" in D.C.Code 1973, § 11–701 does not limit the appellate jurisdiction of this court to final judgments terminating an action, *Frost v. Peoples Drug Store, Inc.*, D.C.App.,

327 A.2d 810 (1974), if the exceptional circumstances recognized in *Cohen v. Beneficial Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949), are present. In our opinion, the challenged orders fall into this category, for these orders are separable from the merits of the divorce actions themselves—*i. e.*, the factual issues of voluntary separation and child custody—and, if unreviewed, could cause irreparable harm to the parties.[1]

■ The second preliminary question is whether these appellants did indeed make a satisfactory showing of bona fide diligent but unavailing efforts to locate the defendants whom the process servers had been unable to find—such a showing being a statutory condition precedent, as we have noted, to an order for constructive service. In insisting upon such diligent efforts, our local code recognizes the constitutional principle that a default judgment against a missing defendant is void unless methods reasonably calculated to provide actual notice have been utilized. As the Supreme Court expressed it in the leading case, *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 315, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950):

> [W]hen notice is a person's due, process which is a mere gesture is not due process. The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it. . . .

■ In the able brief submitted by amicus curiae, the point is made that in divorce actions—unlike a probate proceeding, where the moving party may have little knowledge of the persons whose interests are affected—the typical complainant is usually possessed of many feasible methods of tracking down a missing spouse. The brief observes:

> In any divorce action, the parties have shared for a period of time the most intimate of personal and legal relationships, and the plaintiff must therefore be

presumed to have a great deal of information concerning the defendant. While, of course, we advocate no hard and fast rule and we certainly do not urge adoption of a "boiler plate" affidavit, we believe it incumbent upon a plaintiff in a divorce action to furnish the court with the following information before an order authorizing constructive notice is entered: (1) the time and place at which the parties last resided together as spouses; (2) the last time the parties were in contact with each other; (3) the name and address of the last employer of the defendant either during the time the parties resided together or at a later time if known to the plaintiff; (4) the names and addresses of those relatives known to be close to the defendant; and (5) any other information which could furnish a fruitful basis for further inquiry by one truly bent on learning the present whereabouts of the defendant. From such basic information, the plaintiff should then detail for the court the particular efforts which have been made in the effort to ascertain the defendant's present address. Armed with such a showing, the trial judge will be in a position to make an informed determination of the diligent efforts issue and, in an appropriate case, to tailor an order for the giving of notice to the facts of a given situation. Alternatively, if the court is not satisfied from the plaintiff's initial papers, the court may aid the plaintiff, using its process if necessary, in whatever further efforts may be called for by the circumstances of particular cases. (Footnotes omitted.)

We agree with these contentions, for it is plain that the obligation of exploring such avenues of approach before constructive notice may be authorized imposes no greater burden upon indigent divorce complainants than it does upon persons similarly situated, who can afford to pay counsel, court fees, and publication costs. Applying these principles to the individual cases, as amicus did

---

1. Apparently these factors were assumed *sub silentio* in *Cabillo v. Cabillo*, D.C.App., 317 A.2d 866 (1974), where appeals from orders denying petitions to proceed in forma pauperis were entertained. *See also Johnson v. Johnson*, D.C.App., 329 A.2d 451 (1974).

in his analysis, we have also concluded that in only one of these, did the moving party make the necessary showing to satisfy the trial court that all reasonable means of giving actual notice to the absentee defendant had been tried and exhausted. Summarized briefly, the records disclose—

### No. 8765

■ Mrs. Bearstop stated in her complaint that her husband's address was unknown to her, but in her subsequent affidavit she averred that he had not been a resident of the District for more than six months from the date of the filing of her action, and in papers supporting the motion referred to ". . . relatives of defendant known to plaintiff" and to one ". . Farley at 2026–13th St., N.W. . . . the only friend of defendant whose whereabouts is known to plaintiff." None of these documents reveals the name of the husband's employer, if any, when the couple lived together from 1958 to 1965, or if any effort had been made to learn either through Farley or the relatives the current address of the missing defendant. In our view, the order denying the motion was not erroneous.

### No. 8774

■ In this case, Mrs. Leak did provide more details to substantiate the allegation of a diligent search than did the plaintiff in No. 8765. Where her complaint was filed, she gave a District address for her husband—as he was apparently then living at the house of his sister, also a local resident, but for some unexplained reason, no attempt was made to serve process upon him there. In subsequent papers, she averred that she had been told (a) by his mother, a resident of West Virginia, that he occasionally visited her, but that she did not know his current address, and (b) by his sister, that she did not know her brother's address. No information pertaining to his employment or efforts, if any, to locate him through his last or previous employers was furnished. Under the circumstances, we cannot hold that the court abused its discretion in denying the motion.

### No. 8775

■ Mrs. Cash and her husband were married in South Carolina in 1958 and separated in 1964. There is nothing in the record to indicate that Cash ever resided in the District. Her affidavit states that his mother lives in Chesterfield, S. C., and an accompanying legal memorandum specifies a last known address as 1228 No. Tryon [Street], Charlotte, N. C., but states that efforts to contact him there or to ascertain his whereabouts through inquiry to his mother had been unsuccessful. She had checked the telephone and city directories of the District of Columbia to no avail. Just what purpose a check of these directories rather than the corresponding directories of Charlotte, the city he was last known to have resided in would serve, is not explained. Nor was an assertion made of any effort to trace the missing husband through former employers or the postal authorities of Charlotte. Hence, denial of the motion was not error.

Accordingly, we affirm the challenged orders in the foregoing cases. As the complaints in these cases have not been dismissed, plaintiffs still have an opportunity to make further efforts to trace their missing spouses and if such efforts proved unavailing, to return to court and make a proper showing of a diligent search. Until this is done, none of these plaintiffs is in a position to move for substituted or constructive service.

■ Of course, there may be circumstances where the marriage or courtship was of such short duration that the party seeking the divorce may not be presumed to have had much information about the missing spouse. In such cases, the court, by interrogating the plaintiff, may conclude that the kind of efforts which would ordinarily be deemed essential to a diligent search would not prove fruitful. But in the three cases summarized, it is apparent that all the channels of available information were not pursued.

We note that in these cases (Bearstop, Leak, and Cash) the motions for some method of constructive service other than publication contemplated mailing to the last known address of the defendant and posting in the courthouse. Trial courts should always inquire about such mailing and its result in order to satisfy themselves that at least this element of a diligent search was made. So far as posting in a courthouse is concerned, there may be certain situations where such posting is less likely to be brought to the attention of a defendant who has relatives or other connections in the metropolitan area then would a notice in such a publication as the Daily Washington Law Reporter, which is widely read by practicing lawyers, banks, and credit agencies.

In short, where personal service has proved impracticable, the courts must protect two potentially conflicting constitutional rights, the right of an indigent plaintiff to pursue a divorce case to judgment without payment of fees, costs, or legal advertising, *Boddie v. Connecticut*, 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971),[2] and the right of an absentee defendant to notice of the pendency of proceedings, as emphasized in the *Mullane* case, *supra*.

### No. 8839

In contradistinction to the three companion cases we have discussed, Mrs. Ramirez made a fairly strong showing of a diligent search for her husband. The complaint states that the couple were married in Colombia, South America in 1958 and were voluntarily separated in 1969, while still residing in Colombia. She immigrated with her children to the United States the following year, but believes that he is still living in the country of the original matrimonial domicile although she does not know his address. On these representations, she moved for an order of publication in one newspaper only, the Washington Afro-American, alleging that she could not afford the cost of advertising in any other. This motion was denied.

The plaintiff then made additional efforts to notify her husband of the pendency of the action, posting a copy of the summons and complaint by registered mail to him in care of his sister, also a Colombia resident. She also wrote to his mother and his sister, seeking information on her husband's whereabouts. She received a reply from his sister, in which the latter wrote (in Spanish) that the family had not heard a thing about him for about four years, that none of his acquaintances had seem him, and that they were worried about his disappearance because some 15 years previous, another sister was lost and has never been traced.

In a hearing on a motion for reconsideration, plaintiff produced copies of this correspondence, including a translation of the response of her sister-in-law. The motions court tacitly conceded that plaintiff had made a satisfactory showing of diligence, but denied the motion on the ground that the order of publication should be two newspapers of general circulation.

■ As the plaintiff here was undoubtedly indigent—her papers disclose that the only source of support for her three children and herself consisted of a monthly public assistance payment—we have concluded on the authority of *Johnson v. Johnson*, D.C.App., 329 A.2d 451 (1974), (which pointed out at 452 that Rule 4(j) provides for published notices in some other manner in cases of undue hardship) that the court erred in denying the motion for reconsideration on the ground that publication in two newspapers was an indispensable requirement. Hence, the last order of the trial court must be vacated and the case remanded.

---

**2.** The *Boddie* opinion left open the question of whether state courts may order legal advertisements at public expense, and the authorities are in conflict on this issue. *Cf. Deason v. Deason*, 32 N.Y.2d 93, 343 N.Y.S.2d 321, 296 N.E.2d 229 (1973), and *Hart v. Super. Ct.*, 16 Ariz.App. 184, 492 P.2d 433 (1972), *with Cohen v. Bd. of Supervisors*, 20 Cal.App.3d 236, 97 Cal.Rptr. 550 (1971).

This does not mean, of course, that an appropriate disposition would be the issuance of an order in the form requested. It is obvious that an order requiring publication in any local newspaper, including the Washington Afro-American which has little or no circulation in the foreign country where appellee Ramirez resides, would be no more than an empty gesture. As the *Mullane* case points out, the due process clause requires some method reasonably designed to give actual notice to a missing defendant or claimant and by no stretch of the imagination could appellant's motion, as currently drawn, answer this description. Accordingly, the form of relief embodied in the new order should be one that the court in its discretion deems appropriate in light of the geographic and linguistic problems presented.[3]

*Affirmed* in Nos. 8765, 8774, and 8775.

*Reversed and remanded* in No. 8839.

---

**3.** Worthy of consideration is a suggestion in the brief of amicus, that the money plaintiff is prepared to spend for publication in one newspaper would better be used for first class foreign postage to defendant's relatives in South America with appropriate translation of the enclosed summons and complaint.