**In the Matter of E. S. N.**

**No. 81–564.**

District of Columbia Court of Appeals.

Argued March 24, 1982.

Decided March 29, 1982.*

Julio C. Trujillo, Washington, D. C., for appellant.

Wallace J. Mlyniec, Washington, D. C., for appellee.

Before NEWMAN, Chief Judge, and KELLY and KERN, Associate Judges.

PER CURIAM:

Appellant Samuel N. father of E. S. N., challenges an order of the Family Division of Superior Court which terminated his parental rights. He contends that (1) certain statutory provisions regarding notice were violated, and (2) the method of service violated due process of law. Finding no error, we affirm.

I

In November 1974, appellant placed E. S. N. in emergency foster care with the Department of Human Services (DHS). At that time, E. S. N.'s mother was incarcerated and appellant was about to be returned to prison. E. S. N. was then two years old.

Subsequent to the foster care placement, a petition was filed in the Family Division of Superior Court alleging that E. S. N. was a neglected child. On October 27, 1976, a trial was held and E. S. N. was found neglected pursuant to D.C.Code 1973 Supp. V and VII, § 16–2301(9)(C), and committed to DHS.

Around October 1978, appellant disappeared and could not be found prior to

---

* The original disposition of this case was by an unpublished Memorandum Opinion and Judgment. Upon the request of appellee, the court decided to publish.

April 15, 1981, the date of the hearing on the motion to terminate the parent-child relationship. DHS social workers and others attempted to contact the father through relatives and parole authorities. These efforts were unsuccessful. During this three-year period and the three-year period preceding his disappearance, appellant provided no support for E. S. N. and did not attempt to contact her in any way. In short, E. S. N. was an abandoned child.

Between 1974 and 1981, E. S. N. resided in DHS foster homes. In January 1981, the guardian ad litem filed a motion to terminate the parent-child relationship pursuant to D.C.Code 1981, §§ 16–2353 *et seq.* In February 1981, counsel filed a motion requesting that appellant be given constructive notice of the proceedings since his actual residence was unknown and efforts to locate him had proven fruitless. Based on written and oral representations made at the hearing, Judge Goodrich authorized constructive notice and permitted it to be posted in the Family Division Clerk's Office. On that same day, Judge Goodrich appointed Mr. Julio C. Trujillo to represent appellant's interest.

On April 13, 1981, Mr. Trujillo filed a motion to reconsider the February order permitting constructive notice, and a hearing was held that same day. Counsel for E. S. N. repeated the efforts that had been made to locate appellant and supplemented the record with affidavits from a social worker and an investigator regarding their efforts to locate his residence. Mr. Trujillo did not know then, and still does not know, the whereabouts of his client.

Judge Goodrich refused to vacate the February 18, 1981 order permitting constructive notice and certified the case to Judge McIntyre for a hearing on the merits

of the motion to terminate parental rights. Judge McIntyre found that both parents had abandoned E. S. N. and that the child's best interests would be served by terminating the parent-child relationship.

## II

Appellant contends that the statutory provisions requiring notice were not complied with. D.C.Code 1981, § 16–2357 requires that parents be given notice of proceedings to terminate the parent-child relationship.[1] This section provides that personal service be made upon the parents. Subsection (d), however, permits constructive service "pursuant to rules of the Superior Court" in the event personal service cannot be effected.

Super.Ct.Neg.R. 14(a)(1) provides that if a person cannot be personally served, and service cannot be made upon another person of suitable age and discretion at the dwelling of the person sought to be served, a judge may authorize service by certified mail to the party's last known address "or by such other notice as the judge may authorize." Appellee contends that this rule together with § 16–2357 permitted the constructive notice authorized by Judge Goodrich.

It is undisputed that both the statutory provision and the court rule provide for personal service. It is only when the serving party is unable to effect such service that these provisions permit alternative methods of service. In this case, DHS workers and other individuals made diligent effort to locate appellant. No record of appellant's residence existed, and the social worker assigned to the case for six years had not heard from him. Attempts to locate him through a brother and an aunt were unsuccessful. He was not in prison

---

1. Section 16–2357. Notice.

(a) When a motion to terminate the parent and child relationship is filed, a judge shall promptly set a time for an adjudicatory hearing and shall cause notice thereof to be given to all parties.

(b) A judge shall direct the issuance to and personal service upon the child's parent of a summons together with a copy of the motion

to terminate the parent and child relationship.

(c) When it is appropriate to the proper disposition of the case, a judge may direct the service of a summons upon other persons.

(d) If a personal service under this section cannot be effected, then notice shall be made constructively pursuant to rules of the Superior Court of the District of Columbia.

and his parole officer had no idea where he was. Finally, an investigator attempted to locate appellant, but had no success. In light of these diligent efforts, personal service undoubtedly would have been fruitless.

Appellant insists that personal service should have been *attempted* before constructive service was authorized, even though the facts indicate that such an attempt would have been futile. Appellant relies on *Bearstop v. Bearstop*, D.C.App., 377 A.2d 405 (1977), in support of his contention. In *Bearstop*, four consolidated appeals challenged trial court orders in four separate divorces denying motions to effectuate constructive service upon their husbands without regard to publication requirements. This court affirmed in three of the cases because the appellants had not made diligent efforts to locate the defendant husbands. The court reversed and remanded in the fourth case, however, because the appellant had made such efforts.

Diligent efforts to locate appellant were certainly made in the present case. All possible leads were explored and affidavits regarding these efforts were presented in court and made part of the record. Constructive service, therefore, was not improper.

■ Appellant also contends that the posting of notice in the Office of the Clerk of the Family Division is authorized by D.C. Code 1981, § 13–340(a) only "in actions for divorce in which service by publication is authorized under this chapter . . . ." He claims that since this matter is not a divorce, this method of service is inappropriate. Appellee never claimed, however, that § 13–340(a) controlled in this case. Section 16–2357 and Super.Ct.Neg.R. 14(a)(1) give the trial court considerable leeway in choosing an alternative method of service when necessary. Appellee simply suggested this method of service as one which has been sanctioned by the Council of the District of Columbia. The trial court did not abuse its discretion in authorizing this method in the present case.

## III

■ Appellant also argues that the method of service deprives him of due process of law. In *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950), the Supreme Court stated that "an elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." (Citations omitted.) The Court recognized, however, that if the person is missing or unknown, the employment of an indirect or even futile method of notification is no constitutional bar to the termination of that person's rights. *Id.* at 317, 70 S.Ct. at 658–659.

The Supreme Court has stated that the due process requirement depends upon "the private interests at stake, the government's interest, and the risk that the procedures used will lead to erroneous decisions. [The court] must balance these elements against each other . . . ." *Lassiter v. Department of Social Services*, 452 U.S. 18, 101 S.Ct. 2153, 2159, 68 L.Ed.2d 640 (1981) (citing *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976). In *Lassiter*, the Court used this test in determining the due process protections to be accorded a parent in a proceeding terminating the parent-child relationship.

The Supreme Court has established that a parent's right to "the companionship, care, custody, and management of his or her children" is an important interest that "undeniably warrants deference and, absent a powerful countervailing interest, protection." *Id.* at 2160 (citing *Stanley v. Illinois*, 405 U.S. 645, 651, 92 S.Ct. 1208, 1212, 31 L.Ed.2d 551 (1972). That right, however, is not absolute. In *Quilloin v. Wolcott*, 434 U.S. 246, 98 S.Ct. 549, 54 L.Ed.2d 511 (1978), the Court recognized that a father who exercises little actual control over a child and shoulders little responsibility with respect to the daily care of that child may be treated differently for due process purposes than

a father who has assumed such responsibility. *Id.* at 256, 98 S.Ct. at 555.

It is undisputed that appellant abandoned E. S. N. and left her to the care of the city. Not once did he attempt to contact her or inquire as to her well-being. When his interest in the child is balanced against the other interests enumerated in *Mathews,* the method of service used in this case was definitely sufficient. Appellant was not deprived of due process.

*Affirmed.*