**In re Z.C., A.C., and Ax.C.,**
**F.C., Appellant.**

**Nos. 01–FS–912, 01–FS–913, 01–FS–1170.**

District of Columbia Court of Appeals.

Submitted Dec. 10, 2002.

Decided Dec. 31, 2002.

Michael O'Keefe filed a brief for appellant.

Robert R. Rigsby, Corporation Counsel at the time the brief was filed, Charles L. Reischel, Deputy Corporation Counsel, and Sheila Kaplan, Assistant Corporation Counsel, filed a brief for the District of Columbia.

Before SCHWELB, RUIZ, and GLICKMAN, Associate Judges.

SCHWELB, Associate J.

, This appeal [1] arises from a neglect adjudication issued following the criminal conviction of appellant F.C. (the mother), for abusing her then ten-year-old son, Z.C.[2]

In the neglect case, the trial judge found that the boy had been physically abused by his mother, that his two siblings were in imminent danger of being similarly abused, and that the mother was unable to carry out her parental responsibilities towards any of the children because she was serving a sentence of forty months to ten years pursuant to her criminal conviction of child abuse. *See* D.C.Code § 16–2301(9)(A),(C),(E) (2001).[3]

The mother seeks to appeal only from the finding that she was unable to take care of the children while imprisoned for child abuse.[4] D.C.Code § 16–2301(9)(C). She does not contest the finding of physical abuse,[5] nor does she ask that the adjudication that the children are neglected be set aside. The District contends, and we hold, that even if the mother's appeal were successful, Z.C. and his sisters would remain adjudicated neglected children, and F.C. would not benefit from a favorable adjudication. Accordingly, the appeal is from a finding rather than from the judgment, and the appeal must be dismissed.

## I.

On December 14, 1999, Z.C.'s maternal aunt noticed multiple bruises, including

1. Technically, there are three appeals—one for each child—but since the issues addressed are identical, we refer to them as a single appeal.

2. F.C. and Z.C. were referred to in the trial court as F.C.M. and Z.C.M. The initials of Z.C.'s siblings likewise included an "M."

3. D.C.Code § 16–2301(9) defines a "neglected child," *inter alia*, as a child

   (A) who has been abandoned or abused by his or her parent, guardian, or other custodian; or

   * * *

   (C) whose parent, guardian, or other custodian is unable to discharge his or her responsibilities to and for the child because of incarceration, hospitalization, or other physical or mental incapacity; or

   * * *

   (E) who is in imminent danger of being abused and whose sibling has been abused.

4. The mother claims, in substance, that her incarceration did not prevent her from caring for the children, and that she had arranged for the children to remain with the aunt, who was providing for them properly. The District counters that the mother has waived the point by failing to raise it in the trial court. *See, e.g., D.D. v. M.T.*, 550 A.2d 37, 48 (D.C. 1988). Because we decide the case on other grounds, we do not reach this issue; nothing in this opinion should be read as suggesting either merit or lack of merit in the mother's substantive contention.

5. The mother likewise did not appeal from the criminal conviction.

fresh marks and old scars, all over the boy's body. At the time of this discovery, the aunt was caring for Z.C. and his sisters, Ax.C., then aged eleven, and A.C., then aged nine, at her home in Charlottesville, Virginia, because the children's mother had been hospitalized in Washington, D.C. After discovering Z.C.'s injuries, the aunt immediately took him to the University of Virginia Hospital, where he was examined. The examining physician found that there were multiple bruises, including recent injuries, on Z.C.'s back, thighs and legs.

According to Z.C., his mother, F.C., and J.C., a male friend who lived with her, had beaten Z.C. regularly. The mother had used a belt buckle to beat him for minor misconduct, and J.C. had also beaten him repeatedly. Z.C.'s sisters confirmed his account. One of the sisters related that Z.C. was beaten so severely that she would turn up the radio to avoid hearing his cries.

On December 15, 1999, the Office of Corporation Counsel filed a neglect petition in the Superior Court, alleging that the boy had been abused by his mother and by J.C. within the meaning of § 16–2301(9)(A). Corporation Counsel also filed petitions concerning Z.C.'s siblings, alleging that they were in imminent danger of being abused, as their brother had previously been abused, by the mother and by J.C. An initial hearing was held on December 15, 1999, and the trial judge or-

dered that the children remain in the home of the maternal aunt.

■ Both the mother and J.C. were arrested and criminally charged with abusing Z.C. The affidavit in support of the arrest warrant for the mother states, *inter alia:*

> The defendant [mother] also participated in repeated beatings of the child committed by her boyfriend. The defendant's boyfriend beat the child in the middle of the night while sleeping. On a regular basis, the boyfriend woke the child out of a sleep, brought him to the basement and repeatedly beat him with a long hard object after applying duct tape on his mouth, around his wrists and legs. The child was often kept in isolation. The child reported that he would get two spoonfuls of food at mealtime.[6]

On July 10, 2000, the mother was convicted of assaulting Z.C. with a dangerous weapon.[7] She was sentenced to serve forty months to ten years in prison.[8] After the mother was imprisoned pursuant to her sentence, the trial judge granted Corporation Counsel leave to amend the neglect petition to include an allegation that the mother was unable, in light of her incarceration, to assume responsibility for the children. *See* D.C.Code § 16–2301(9)(C).

On September 22, 2000, the court held a brief factfinding hearing with respect to the neglect allegations. The mother, who was then incarcerated, was represented by counsel, as she had been since the incep-

---

6. This affidavit, as well as other documents, were admitted into evidence at the factfinding hearing, although they plainly constituted hearsay. Counsel for the mother interposed no objection, however, and "[h]earsay evidence admitted without objection may be properly considered by the trier of fact and given its full probative value." *Abdulshakur v. District of Columbia,* 589 A.2d 1258, 1265 (D.C.1991) (quoting *Mack v. United States,* 570 A.2d 777, 782 (D.C.1990)).

7. The mother and J.C. had beaten Z.C., *inter alia,* with a belt buckle and with other hard objects.

8. J.C. was convicted of a similar charge, and he received the same sentence as the mother did.

tion of the case. The mother was called to the stand by opposing counsel and testified, and her attorney stipulated with Corporation Counsel that she had been convicted and incarcerated. Certified copies of documents relating to her conviction and sentence were entered into the record. The mother's attorney presented no evidence and waived closing argument.

At the conclusion of the trial, the judge found that Z.C. had been abused and that his sisters were in imminent danger of abuse. Subsequently, on November 30, 2000, the judge issued written findings. Based on the mother's criminal conviction, the judge found that Z.C. was an abused child within the meaning of D.C.Code § 16–2301(9)(A), and that his siblings were neglected children within the meaning of § 16–2301(9)(E). Finally, because the mother was incarcerated, the judge found that she was unable to carry out her parental responsibilities, and that Z.C. and his sisters were therefore also neglected children within the meaning of D.C.Code § 16–2301(9)(C). The mother filed a timely appeal.

## II.

■ In this court, the mother challenges only the finding that she was unable to care for her children because she was serving a sentence pursuant to her criminal conviction. *See* D.C.Code § 16–2301(9)(C). She has not challenged the two other bases for the neglect adjudication, nor has she asked the court to set aside the trial court's adjudication that Z.C. and his sisters are neglected children. Accordingly, even if her appeal were successful, the mother could not obtain any practical relief, for the neglect adjudication based on her abuse of her son, and the ensuing consequences of that adjudication,[9]

would be undisturbed. Thus, without the potential for any remedial benefit from a decision by this court, this mother has no standing to bring this appeal. *See Simon v. E. Kentucky Welfare Rights Org.*, 426 U.S. 26, 42–46, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976).

■ In order to establish standing, a litigant must show "a substantial probability that the requested relief would alleviate [her] asserted injury." *Lee v. D.C. Bd. of Appeals and Review*, 423 A.2d 210, 216 n. 12 (D.C.1980). In other words, in order to prosecute the appeal, the mother must show that, "were a court to grant [her] the relief [she] request[s], [her] injury would be redressed." *Greater Tampa Chamber of Commerce v. Goldschmidt*, 200 U.S.App. D.C. 205, 210, 627 F.2d 258, 263 (1980). *See also* 13 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 3531.6 (1984) (there must be a prospect of a "remedial benefit" from the court's decision). If no personal benefit to the litigant can be achieved by the appeal, then the controversy becomes purely academic, and the court will not address the merits.

In *In re G.H.*, 797 A.2d 679 (D.C.2002), we recently had occasion to examine the standing of the live-in paramour of the respondent children's mother to challenge a neglect adjudication which resulted in the removal of the children from the mother's home. The mother had not appealed from the neglect adjudication against her, and the children had been placed with their biological father at disposition. We recognized in *G.H.* that the children could not be returned to the paramour and the mother as a result of the appeal, because although the paramour had been acting in

---

9. These consequences include the court's finding under D.C.Code § 16–2301(9)(E) that Z.C.'s siblings were in imminent danger of being abused.

*loco parentis,* he had no legal right to the children and the mother did not file an appeal. Nevertheless, we concluded that the paramour had standing because the ruling negatively affects his reputation, and the appeal could therefore provide a potential reputational benefit to him. *Id.* at 683 (citing *In re E.R.,* 649 A.2d 10, 12 (D.C.1994)). Thus, although the paramour's appeal could not affect either the neglect adjudication vis-a-vis the children's mother or the children's placement with the father, the paramour nevertheless had standing to prosecute the appeal in order to clear his name.

In the present case, on the other hand, the mother has not shown that the successful prosecution of the appeal could bring her any remedy, reputational or otherwise. The mother would surely be hard-pressed to argue that her reputation was harmed by losing custody of the children because of incarceration, when her criminal conviction on charges of child abuse—a conviction which was not appealed—has established beyond a reasonable doubt that she had abused Z.C. The mother's conviction of this charge is a permanent stigma that would survive any relief that she could obtain through this appeal, even if this court were to set aside or strike that part of the neglect adjudication that was based on her incarceration. Further, the mother has not identified any other prejudice that she has suffered or could suffer as a result of the challenged finding. Accordingly, the mother lacks standing to prosecute her appeal.

█ This appeal is also subject to dismissal for a slightly different, but related, reason. The mother has not appealed from the neglect adjudication; rather, she has in effect asked this court to strike from the trial judge's order, as unsupported by the evidence, one of the three findings supporting that adjudication, namely, the finding that the mother is incarcerated and therefore unable to care for her children. The case is thus reminiscent of *Thoubboron v. Ford Motor Co.,* 624 A.2d 1210 (D.C.1993):

> The owners also ask us to "strike" from the judge's order language which they characterize as incorrect and as "dictum." This position is not well taken, for like the Supreme Court, "this [c]ourt reviews judgments, not opinions . . . ."

*Id.* at 1212 n. 1 (quoting *Chevron, U.S.A., Inc. v. N.R.D.C., Inc.,* 467 U.S. 837, 842, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984)). Although there are differences—*e.g.,* the finding sought to be struck here is an alternative basis for the adjudication, rather than dictum—this case does not differ in principle from the issue addressed in the *Thoubboron* footnote.

### III.

For the foregoing reasons, the appeal is dismissed.

*So ordered.*