985 A.2d 1113 (2009)
In re Petition of N.N.N.; D.H., Appellant.
No. 06-FS-872.
District of Columbia Court of Appeals.
Argued October 30, 2008.
Decided December 31, 2009.
*1114 Leslie J. Susskind, appointed by this court, for appellant.
Jon J. Nathan, with whom Philip W. Horton was on the brief, for appellee, N.N.N.
Stacy L. Anderson, Assistant Attorney General for the District of Columbia, with whom Peter J. Nickles, Acting Attorney General for the District of Columbia (at the time the brief was filed), Todd S. Kim, Solicitor General, and Donna M. Murasky, *1115 Deputy Solicitor General, were on the brief for appellee, District of Columbia.
Christopher May, for appellee De.H., adopting the brief of appellees N.N.N. and the District of Columbia.
Before RUIZ, FISHER, and BLACKBURNE-RIGSBY, Associate Judges.
BLACKBURNE-RIGSBY, Associate Judge:
In this adoption matter, D.H. (appellant, birth mother) makes three arguments on appeal: First, she contends that the trial court lacked personal jurisdiction over her in the adoption proceeding below. Second, she argues that Super. Ct. Adoption R. 4 and her due process rights were violated because she was not personally served with the summons for the adoption hearing  the hearing at which the magistrate judge waived her consent to N.N.N.'s adoption of the minor child De.H. Third, she contends that the trial court erred in finding that she abandoned her birth daughter. Appellant asks that this Court reverse the judgment of adoption and remand this case for a new hearing. We affirm.
For the reasons discussed more fully below, we conclude as follows: First, given that the trial court acquired personal jurisdiction over appellant in the proceeding that led to a determination that her children were neglected (the "neglect matter"), it retained personal jurisdiction for the duration of the process of attempted family reunification and permanency planning (the "rehabilitative process"), which culminated in the adoption proceeding. Second, though personal service is the preferred method of giving notice, we find no statutory or constitutional infirmity in the manner by which appellant was provided notice in this particular case. Specifically, we find that appellant was provided notice in accordance with Super. Ct. Adoption R. 4(e). Furthermore, we find her due process argument unpersuasive because the notice afforded in this case  i.e., constructive notice by posting, following an "unusually substantial" effort to accomplish personal service  was constitutionally sufficient insofar as it was "reasonably calculated, under all the circumstances, to apprise [appellant] of the pendency of the action and afford [her] an opportunity to present [her] objections." Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950). Third, we conclude that any error in the trial court's finding of abandonment was harmless because on appeal she challenges only one of the two independent bases supporting the trial court's determination to waive her consent to the adoption. Therefore, the unchallenged (and sufficient) alternative basis for the trial court's determination precludes appellant's request for relief.

I.

A. Factual and Procedural Background
De.H. (adopted child) was born to appellant on November 24, 1999. Four months later, on March 22, 2000, the Child and Family Services Agency ("CFSA") received a report that De.H.'s four siblings were playing in an alley without shoes, appropriate clothing, or adult supervision. CFSA learned that appellant's residence was roach-infested, its carpet was covered in feces, its interior reeked of stale urine, and the refrigerator was broken, without any food inside. Responding to these conditions, CFSA transferred the children to their mother's sister, P.H., on August 25, 2000. On May 1, 2001, the trial court adjudicated De.H. and the other children as neglected. Two years later, De.H. was removed from P.H.'s home as a result of the deplorable living conditions there.
*1116 De.H. was 3½ years old when she was placed in foster care with N.N.N. on May 21, 2003. After De.H. was placed with N.N.N., appellant made no effort to contact De.H. or provide for her financial support. Nor did appellant contact CFSA seeking reunification, and when N.N.N. initiated phone contact between De.H. and appellant, appellant often cut short the calls. The court suspended appellant's visitation rights in September 2004 because she did not show up for visits on a consistent basis. Appellant did not challenge the suspension of her visitation rights.
On August 6, 2004, N.N.N. filed a petition to adopt De.H. While De. H.'s father consented to the adoption, appellant apparently did not.[1] On August 23, 2004, the court issued a "Notice to Mother of Pending Adoption Proceeding and Order to Show Cause" and sent copies, inter alia, to appellant and her trial counsel. The August 23, 2004 Order directed appellant to appear on September 21, 2004 for a "show cause" hearing, pursuant to Super. Ct. Adoption R. 4(a)(1), so the court could determine whether appellant's consent to the adoption should be waived. Appellant was not personally served with the August 23, 2004 Order and she failed to appear on September 21, 2004. The show cause hearing was rescheduled for December 17, 2004.
On September 27, 2004, N.N.N. filed a motion to provide notice to appellant by posting, which included an affidavit of Mr. Heslep  an investigator from Child and Family Services  that detailed his efforts to locate appellant and serve notice on her. The magistrate judge, finding that diligent efforts had been made to locate appellant, granted the motion on September 29, 2004 and notice was posted in the Domestic Relations Clerk's Office in accordance with Super. Ct. Adoption R. 4(e)(3) on October 4, 2004. Appellant did not show up for the rescheduled show cause hearing on December 17, 2004 either, but her lawyer made an appearance on her behalf and moved to quash service by posting. Magistrate Judge Johnson denied appellant's motion and proceeded with the hearing. Counsel for appellant participated in the hearing and argued on the merits against waiving appellant's consent to the adoption. Thirteen days later, Magistrate Judge Johnson issued a written decision waiving appellant's consent to the adoption, finding that she abandoned De.H. and, alternatively, that the waiver was in De.H.'s best interest.

B. Magistrate Judge's Findings
The trial court decided to waive appellant's consent to the adoption because it found that her "conduct demonstrate[d] that she ha[d] no interest in parenting [De.H.] and ha[d] not taken the necessary steps to develop or maintain a parental relationship with [De.H.]" Indeed, CFSA's initial goal for De.H. was to place her temporarily with her aunt, P.H., while appellant took advantage of parenting classes, psychological services, and help obtaining public benefits. Appellant failed to undertake the parenting classes, however, and she did not secure a psychological evaluation until almost three years after CFSA removed De.H. from her care. Further, appellant failed to take full advantage of her supervised visits with De.H. Ultimately, De.H.'s permanency goal was changed to adoption once it was determined that she could neither be reunified *1117 with appellant nor placed with a suitable relative. When CFSA initially placed De.H. with N.N.N. in March 2003, De.H. was dirty and had ten cavities. She also lacked personal possessions and had a limited vocabulary.
N.N.N., an honorably discharged member of the United States armed forces, who was employed as a dental hygienist at the time of De.H.'s placement, acted immediately to address De.H.'s most pressing physical and developmental needs. N.N.N. had De.H.'s cavities treated, enrolled De.H. in preschool, provided De.H. with speech and individual therapy, and personally worked with De.H. to improve her speech and vocabulary on a daily basis. De.H.'s social workers corroborated N.N.N.'s efforts, testifying that N.N.N. provided De.H. with a stable home and a needed emotional connection. Further, Kinder Care, De.H.'s pre-school and after-school-care provider, described De.H. as academically, emotionally, and socially well-adjusted, and noted that N.N.N. and De.H. were bonding well. N.N.N. also ensured that De.H. maintained contact with her siblings.
Although supervised visits between De.H. and appellant resumed three months after De.H.'s placement with N.N.N., there was little interaction between the two during these visits. N.N.N. initiated phone calls between De.H. and appellant, but appellant often cut the calls short. These conversations seldom lasted more than five minutes. The magistrate judge also found that appellant "voluntarily failed to contribute to [De.H.'s] support" during the six months preceding N.N.N.'s filing of the petition for adoption.

C. Attempts to Serve Appellant
After N.N.N. filed her adoption petition in August 2004, the court issued a Notice to Mother of Pending Adoption Proceeding and Order to Show Cause, which directed that a CFSA Diligent Search Unit investigator personally serve appellant with notice of the adoption proceedings. On August 27, 2004, Mr. Heslep checked the District of Columbia Automated Client Eligibility Determination System ("ACEDS") and confirmed that appellant was receiving public assistance payments at a certain address on Langston Place, S.E. The same day, Mr. Heslep called the Langston Place residence. A woman answered the telephone but he was unable to ascertain her identity before she hung up. On August 31, 2004, Mr. Heslep visited the Langston Place residence, but nobody answered the door, so he left a note asking that appellant call him. He also left a similar note at P.H.'s residence that day, but he did not receive a return call from appellant. On September 3, 2004, after learning from De.H.'s father that appellant sometimes stayed at P.H.'s residence, Mr. Heslep returned there but nobody answered the door, so Mr. Heslep left another note asking appellant to contact him. Mr. Heslep attempted to contact appellant at P.H.'s home again, unsuccessfully, on September 8, 2004, and again he left a note requesting that appellant contact him.
Two days later, Mr. Heslep returned to the Langston Place residence. A woman who identified herself as appellant's sister "A.J." answered the door but claimed that she did not know where appellant was or when she would return. Mr. Heslep explained the reason for his visit and left a message for appellant along with a copy of the Notice and Show Cause Order. He then asked "A.J." for her Social Security number and date of birth, but she refused to give out her Social Security number, saying only that she was born on December 15, 1965. He observed in his affidavit that "A.J." did not look like she was 38 years old, but more like 25, which was around appellant's age. Later, Mr. Heslep attempted to confirm "A.J.'s" identity but *1118 found no evidence of anyone with that name living in the D.C. area. Soon thereafter, Mr. Heslep learned from De.H.'s father that appellant did not have a sister named A.J. On September 14, 2004, Mr. Heslep attempted again to reach appellant at the Langston Place residence, and left another note requesting that anyone in the household contact him.
On September 21, 2004, Mr. Heslep filed an affidavit detailing his personal efforts to serve appellant with notice of the proceedings, which Magistrate Judge Johnson described as "unusually substantial."
The court entered the final adoption decree on April 27, 2005, finding that CFSA investigator Thomas Heslep's efforts to personally serve appellant with notice of the hearing were sufficient. Appellant filed a timely petition for review on May 6, 2005.

D. Trial Judge's Conclusions
Judge J. Michael Ryan reviewed the magistrate judge's decision pursuant to Super. Ct. Gen. Fam. R. D(e)(1).[2] Judge Ryan upheld the decision on June 23, 2006, reasoning that the magistrate judge neither committed an error of law nor abused his discretion both (a) in finding that appellant received proper notice, and (b) in waiving her consent to the adoption proceeding. Appellant filed a timely notice of appeal on July 24, 2006.

II. Analysis

A. Standard of Review
We review the trial court's decision to authorize notice by posting under an abuse of discretion standard. See, e.g., In re E.S.N., 446 A.2d 16, 18 (D.C.1982). Whether the method of service used in this case comports with the applicable rule, however, is a question of law, which we review de novo. We also review appellant's constitutional claims  i.e. that the trial court was without personal jurisdiction and that notice by posting violated appellant's due process rights  de novo. Finally, regarding appellant's claim that the trial court erred in finding that she abandoned her birth daughter, we review the trial court's legal determinations de novo, whereas the determination that termination of parental rights is in the best interest of the child is a finding of fact reviewed under the "clearly erroneous" standard. See, e.g., In re J.D.W., 711 A.2d 826, 830 (D.C.1998).

B. Applicable Law

i. The Trial Court Retained Jurisdiction Over Appellant for the Adoption Proceeding
Appellant contends that even if the Superior Court had jurisdiction over her in the neglect matter, it had to reacquire jurisdiction for the adoption matter. We disagree. Once the trial court acquires jurisdiction over a parent in a neglect matter, it retains jurisdiction until the child is permanently placed, whether reunified with the parent, or placed with a relative or adopted. See D.C.Code § 16-2320(a) (2001); cf. In re K.M.T., 795 A.2d 688, 690 (D.C.2002) (noting in the context of neglect proceedings that "finality has generally been held to mean either a restoration of physical custody, a termination of parental rights, or an adoption").
"If a child is found to be neglected, the Division exercising juvenile jurisdiction shall also have jurisdiction over [the birth mother] to secure the [mother's] full cooperation and assistance in the entire rehabilitative *1119 process and may order [among several] dispositions which will be in the best interest of the child." D.C.Code § 16-2320(a) (emphasis added). These alternatives include the Division's power to "[t]erminate the parent and child relationship for the purpose of seeking an adoptive placement for the child pursuant to subchapter III of this chapter." D.C.Code § 16-2320(a)(6). Here, the trial court adjudicated De.H. as neglected on May 1, 2001. In doing so, it exercised its jurisdiction over appellant pursuant to D.C.Code § 16-2320(a) and thus retained "jurisdiction over [appellant] to secure [her] full cooperation and assistance" for the "entire rehabilitative process."[3]
The neglect statute expressly states that "[t]he Division [exercising juvenile jurisdiction] may make such other disposition as is not prohibited by law and as the Division deems to be in the best interests of the child." D.C.Code § 16-2320(a)(5) (emphasis added). The "best interests of the child" determination expressly includes the option to "[t]erminate the parent and child relationship for the purpose of seeking an adoptive placement for the child. ..." D.C.Code § 16-2320(a)(6). The trial court's retention of personal jurisdiction over parents for the entirety of the rehabilitative process is consistent with "[t]he neglect statute[, which] vests [the trial court] with broad authority to protect the safety and welfare of neglected children." In re T.W., 732 A.2d 254, 258-59 (D.C.1999) (citing D.C.Code § 16-2320(a)). Furthermore, we have noted that retaining jurisdiction for the entire rehabilitative process is justified for a variety of reasons, including to protect the child's best interests. Cf. In re O.A., 548 A.2d 499, 501 (D.C.1988) (explaining that if a court were to lose its jurisdiction, "custody of the children would be left in limbo or, worse yet, would revert automatically to the allegedly neglectful parent without any judicial evaluation of the environment into which the children would be returned").
In this case, the "entire rehabilitative process" lasted almost four years. From the moment the trial court acquired jurisdiction over appellant in the neglect matter, it retained jurisdiction until it made its final determination regarding a permanent placement for De.H. D.C.Code § 16-2320(a); In re K.M.T., supra, 795 A.2d at 690. Thus, the trial court did not need to reacquire jurisdiction over appellant because, in this case, De.H.'s adoption was the culmination of the "rehabilitative process," which began nearly four years earlier upon the filing of the neglect petition.

ii. Appellant Had Adequate Notice of the Show Cause Hearing
Notwithstanding our conclusion that the trial court retained personal jurisdiction over appellant, she was still entitled to notice of the adoption proceeding, and thus we must determine whether the notice in this case was legally and constitutionally sufficient. Appellant argues that the applicable rule and her due process rights were violated because she was not personally served. We disagree. Though Super. Ct. Adoption R. 4(e) expresses a clear preference for personal service of notice, we find no statutory or constitutional infirmity in the manner by which appellant was served in this particular case. Here, the magistrate judge ordered notice by posting only after noting the "unusually substantial" efforts that had been expended trying to serve appellant personally. Indeed, the trial court upheld the magistrate judge's decision and found that the *1120 order to serve appellant by posting was proper "because personal service was not effective upon [appellant.]" Under all the circumstances, therefore, we cannot say that appellant's due process rights were violated.
First, we examine whether the requisite notice was provided to appellant under Super. Ct. Adoption R. 4, which, in pertinent part, provides:
[N]otice of adoption proceedings and order to show cause, which may be given by summons, shall be served in one or more of the following ways, or as otherwise authorized by statute or rule:
(1) Registered mail. Notice of the adoption proceedings shall be served by registered mail, restricted delivery to addressee only, return receipt requested.
(2) Special process server or United States marshal. Notice shall be served by any competent person 18 years or older who is not a party to the proceeding. At the request of the petitioner or movant, notice may also be served by a United States marshal. Service shall be made by delivering a copy of the notice to the individual personally or by delivering a copy of the notice to an agency authorized to receive service of process, or, with leave of Court, by leaving a copy of the notice at the individual's dwelling house or usual place of abode with some person of suitable age or discretion then residing therein.
(3) Posting or publication. Upon a determination that service under subparagraphs (e)(1) and (2) will not be effective, the Court may order posting or publication of the notice. Where the subject of an adoption petition has been adjudicated to be neglected pursuant to D.C.Code § 16-2301 et seq., or in other cases as ordered by the Court, service may be made by posting of the notice by the Clerk in the Domestic Relations Clerk's Office for not less than 14 days or for a period otherwise ordered by the Court.
Super. Ct. Adoption R. 4(e) (emphasis added).[4]
In this case, Magistrate Judge Johnson ordered service by posting in accordance with Super. Ct. Adoption R. 4(e)(3) only after the method of service preferred in the rule was attempted on several occasions. Because the magistrate judge's finding  that Mr. Heslep's efforts to serve appellant personally were "unusually substantial"  was not clearly erroneous, we cannot say the trial court abused its discretion in ordering notice by posting after repeated efforts to serve appellant personally had been unsuccessful. It was only after Mr. Heslep had made numerous *1121 phone calls and in-person visits both to appellant's last known address and her sister's address (where appellant was reportedly staying)[5] that Magistrate Judge Johnson concluded that service by registered mail, or continued efforts to accomplish personal service, would likely be unsuccessful. Indeed, we note that further efforts at personal service were, in fact, unsuccessful.[6]
While it is true that Mr. Heslep did not attempt to serve notice on appellant by registered mail, as in Bearstop,[7] he undertook greater efforts at personal service than were present in In re E.S.N.[8] and we upheld the trial courts's determinations in both of those cases that "diligent efforts" had been made before notice by posting and publication were authorized. In this case, Mr. Heslep checked the ACEDS database, contacted family members, made numerous phone calls, and made several visits to addresses where appellant was reportedly living. He was told by a woman who identified herself as appellant's mother that appellant had been made aware of the hearing as a result of his efforts. In light of Mr. Heslep's diligent *1122 efforts, we cannot say that the trial court abused its discretion in concluding that further attempts at personal service, whether via registered mail or in person, would have been fruitless.[9]
Having found that appellant was served in accordance with the applicable rule and that the trial court did not abuse its discretion in ordering notice by posting does not end our inquiry, however. We must next consider whether there was a violation of appellant's due process rights.[10] "Due process"[11] is more than a mere guarantee of fair process. Washington v. Glucksberg, 521 U.S. 702, 719, 117 S.Ct. 2258, 138 L.Ed.2d 772 (1997). The Due Process Clause also provides "heightened protection against government interference with certain fundamental rights and liberty interests." Id. at 720, 117 S.Ct. 2258. At issue here is a parent's liberty interest in preserving the parental bond with her child, and we have held that parents have a liberty interest in the care, custody, and control of their children. In re A.H., 842 A.2d 674, 684 n. 14 (D.C.2004) (citing Troxel v. Granville, 530 U.S. 57, 66, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000)). This "fundamental liberty interest of natural parents in the care, custody, and management *1123 of their child does not evaporate simply because they have not been model parents or have lost temporary custody of their child to the State." In re A.G., 900 A.2d 677, 680 (D.C.2006) (quoting Santosky v. Kramer, 455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982)). Parents faced with the forced termination of their parental rights thus "have a more critical need for procedural protections than do those resisting state intervention into ongoing family affairs." Santosky, supra, 455 U.S. at 753, 102 S.Ct. 1388.
An essential ingredient "of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Mullane, supra, 339 U.S. at 314, 70 S.Ct. 652 (citing Milliken v. Meyer, 311 U.S. 457, 61 S.Ct. 339, 85 L.Ed. 278 (1940); Grannis v. Ordean, 234 U.S. 385, 34 S.Ct. 779, 58 L.Ed. 1363 (1914); Priest v. Bd. of Tr.s of Las Vegas, 232 U.S. 604, 34 S.Ct. 443, 58 L.Ed. 751 (1914); Roller v. Holly, 176 U.S. 398, 20 S.Ct. 410, 44 L.Ed. 520 (1900)). Notice must reasonably convey the necessary information and afford a reasonable time for interested parties to appear before the court. Id. (citing Grannis, supra, 234 U.S. 385, 34 S.Ct. 779, 58 L.Ed. 1363; Roller, supra, 176 U.S. 398, 20 S.Ct. 410, 44 L.Ed. 520). A "mere gesture" is insufficient to meet the due process standard; something more is needed. Id. at 315, 70 S.Ct. 652. "The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it." Id. This reasonableness test and ultimately the constitutional validity of the selected method of notice may be met where it is "reasonably certain to inform those affected, or, where conditions do not reasonably permit such notice, that the form chosen is not substantially less likely to bring home notice than other of the feasible and customary substitutes." Id. (citations omitted).
In this case, appellant contends that her due process rights were violated because the posted notice was a "mere gesture" that was not reasonably calculated to apprise her of the pendency of the show cause hearing. We disagree. Having reviewed the record, we cannot say that the constructive notice by posting in this case  which Magistrate Judge Johnson authorized only after Mr. Heslep's "unusually substantial" effort to accomplish personal service was unsuccessful  was not "reasonably calculated, under all the circumstances, to apprise [appellant] of the pendency of the action and afford [her] an opportunity to present [her] objections." Mullane, supra, 339 U.S. at 314, 70 S.Ct. 652. Indeed, the entirety of the efforts to provide notice to appellant go well beyond a "mere gesture" and are within the bounds of means that "one desirous of actually informing [appellant] might reasonably adopt to accomplish [notice]." Id. at 315, 70 S.Ct. 652.
As noted above, while Super. Ct. Adoption R. 4 expresses a clear preference for personal service, the rule also contemplates alternative methods of service in some circumstances, "[u]pon a determination that service under subparagraphs (e)(1) and (2) will not be effective," and we have upheld the constitutionality of constructive notice in cases where the serving party has been unable to effectuate personal service despite diligent efforts to do so. See, e.g., In re E.S.N., supra, 446 A.2d at 17 (noting that alternative methods of service are permitted only when the serving party is unable to effect personal service); Bearstop, supra, 377 A.2d at 408.[12]
*1124 In sum, we reiterate that the constructive notice by posting in this case  which, again, Magistrate Judge Johnson authorized only after Mr. Heslep's "unusually substantial" effort to accomplish personal service was unsuccessful  was constitutionally sufficient because it was "reasonably calculated, under all the circumstances, to apprise [appellant] of the pendency of the action and afford [her] an opportunity to present [her] objections." Mullane, supra, 339 U.S. at 314, 70 S.ct. 652.

iii. Whether the Trial Court Had Sufficient Basis to Determine that Appellant Abandoned De.H.
Finally, appellant contends that the trial court lacked sufficient basis to conclude by clear and convincing evidence that she abandoned her daughter. We conclude that any error by the trial court in determining that appellant abandoned De.H., would be harmless because appellant failed to challenge the alternate basis supporting the magistrate judge's decision to waive appellant's consent to the adoption. In addition to finding that appellant abandoned De.H. pursuant to D.C.Code § 16-304(d) (2001), Magistrate Judge Johnson found that appellant's consent to De.H.'s adoption should also be waived because it was in De.H.'s best interest pursuant to D.C.Code § 16-304(e). Appellant only challenges the finding that she abandoned De.H. Given that she does not challenge the trial court's alternate "best interests" finding, which provides an independent basis for the trial court's waiver of her consent, even if appellant were to prevail on the abandonment issue, she would not be entitled to reversal of the trial court's decision to waive her consent to the adoption. Cf. In re Z.C., 813 A.2d 199 (D.C.2002). Appellant's claim of error, even if accepted by the court, would be harmless in light of the unchallenged alternative basis relied on by the trial court to waive appellant's consent to the adoption.

III. Conclusion
In sum, we conclude that the trial court retained personal jurisdiction over appellant in the neglect matter throughout the rehabilitative process, including the adoption proceeding. Further, we find no statutory or constitutional infirmity in the manner by which appellant was served notice in this case. Specifically, we find that appellant was served in accordance with Super. Ct. Adoption R. 4(e) and that service by posting in this case was constitutionally sufficient because it was "reasonably calculated, under all the circumstances, to apprise [appellant] of the pendency of the action and afford [her] an opportunity to present [her] objections." Mullane, supra, 339 U.S. at 314, 70 S.Ct. 652. Finally, we conclude that any error in the finding that appellant abandoned De.H. would be harmless because she challenges only one of the two independent bases supporting the trial court's determination to waive her consent to the adoption. Accordingly, the trial court's decision is
Affirmed.
NOTES
[1] The record is not clear whether appellant affirmatively opposed the adoption at the time (or, for example, whether she had simply failed to respond). The court's "Order of Reference, for Expedited Response, for Consolidation, and for Service" dated August 23, 2004, merely states that "[a]ccording to the information provided by the petitioner [N.N.N.], the biological mother does not consent to the adoption."
[2] Super. Ct. Gen. Fam. R. D(e)(1) (2009) provides that "[t]he judge ... shall review those portions of the hearing commissioner's [magistrate judge's] order or judgment to which objection is made, and may affirm, reverse, modify, or remand, in whole or in part, the hearing commissioner's order or judgment and enter an appropriate order of judgment."
[3] Appellant did not challenge the trial court's initial assertion of personal jurisdiction at the commencement of the neglect proceeding.
[4] During the proceedings below, the parties disputed whether Super. Ct. Adoption R. 4(d)(1), concerning "[a] person whose identity and current dwelling or place of abode are known," or 4(d)(2) concerning "[a] person whose identity is known but whose current dwelling or usual place of abode is unknown" applies here. Appellant argued that Rule 4(d)(1) applies because her current dwelling or place of abode was known and she "ha[d] not moved" as of December 17, 2004, when the magistrate judge considered and denied appellant's motion to quash service by posting. Appellee N.N.N. argued, however, in her motion to authorize service by posting, that appellant's "current dwelling or place of abode [was] unknown," noting that Mr. Heslep had "made repeated attempts to contact [appellant] both at her last known address and her sister's address where she ha[d] been reportedly residing." N.N.N. even went so far as to suggest that appellant was evading service. Although neither Magistrate Judge Johnson nor Judge Ryan made express findings as to which provision applied here, we need not decide that issue in this appeal since both 4(d)(1) and (2) point to the methods of service listed in 4(e). (We understand that 4(d)(2) points specifically to 4(e)(3), and not 4(e) generally, but the result is the same because 4(e)(3) references the provisions of subsections (e)(1) and (2)).
[5] Mr. Heslep's "unusually substantial" efforts to personally serve appellant are described in more detail in Section I.C., supra.
[6] Super. Ct. Adoption R. 4(d)(1) expressly contemplates, but does not require, that "the petitioner or agency" may "attempt[] to give notice concurrently or successively in any other manner permitted by this rule." We are particularly impressed that Mr. Heslep continued his efforts to locate and personally serve appellant even after notice by posting was ordered. On October 29, 2004, Mr. Heslep confirmed that appellant still received public assistance payments at the Langston Place residence. Four days later, he visited and called the residence, but nobody answered, so he left a message for appellant. In November, Mr. Heslep spent four days attempting to contact appellant at each address, both by telephone and in person, but to no avail. Mr. Heslep also searched the prison systems of Maryland, Virginia, and the District of Columbia, but found no evidence that appellant was currently, or had recently been, incarcerated. On December 9, Mr. Heslep returned to P.H.'s home, but nobody answered the door. On December 16, Mr. Heslep telephoned P.H. at work, but was rebuffed and ordered to cease calling and stopping by her home. When he called the Langston Place residence that same day, a woman who identified herself as appellant's mother answered the telephone and asserted that appellant was not home and the time of her return was unknown. The woman agreed to inform appellant about the adoption hearing scheduled for the next day. The next day  the morning of the adoption hearing  Mr. Heslep called again and spoke to appellant's mother. She reported that appellant was not home, but that she had given appellant the message about the scheduled adoption hearing.
[7] In Bearstop v. Bearstop, 377 A.2d 405 (D.C. 1977), we found that notice of divorce proceedings by publication was warranted where a woman had made diligent efforts to apprise her husband of those proceedings. 377 A.2d at 410. We noted that the woman had sent a copy of the summons and complaint to her husband's sister by registered mail, and had written her husband's mother and sister seeking information as to her husband's whereabouts. Id. The sister had responded that the family had not heard anything about him for four years. Id. We found that the trial court did not abuse its discretion in concluding that "plaintiff had made a satisfactory showing of diligence[.]" Id.
[8] In In re E.S.N., supra, we found that diligent efforts were made to find a father to give him notice of proceedings to terminate his parental rights even in the absence of mailed notice. 446 A.2d at 18. There, the father had disappeared three years before the hearing on the motion to terminate his parental rights. Id. at 16-17. Social workers and others had attempted to contact him through a brother and an aunt, as well as parole authorities, to no avail. Id. at 17-18. An investigator also failed to locate him. Id. at 18. We found that, despite the fact that no attempts at personal service had been made, the trial court did not abuse its discretion in concluding that these actions constituted diligent efforts sufficient to permit notice by posting. Id.
[9] Appellant contends that there was no express finding that service by "registered mail" would not have been effective. We disagree, however, because we believe Magistrate Judge Johnson's conclusion that "personal service" would not be effective was based, at least in part upon an implicit finding that efforts to serve appellant via registered mail would have been futile. In any event, D.C. also has a statute regarding notice of adoption proceedings, and it provides that "due notice of pending adoption proceedings shall be given... by summons, by registered letter sent to the addressee only, or otherwise as ordered by the court." D.C.Code § 16-306(a) (2001) (emphasis added). Thus, while the rule expressly contemplates providing notice by certain specified means, or "as otherwise authorized by statute or rule," Super. Ct. Adoption R. 4(e), the applicable statute authorizes giving notice by summons, by registered letter, "or otherwise as ordered by the court." D.C.Code § 16-306(a). Accordingly, in this case, we have an alternative basis to conclude that appellant was served in accordance with Super. Ct. Adoption R. 4(e), because even if we assume, arguendo, that the magistrate judge failed to determine that service by registered mail would not be effective, the governing statute, D.C.Code § 16-306(a), expressly authorized Magistrate Judge Johnson to order service by means other than those identified in the statute and rule.
[10] We reject appellee's argument that Super. Ct. Adoption R. 4(e)(3) automatically authorizes service by posting in any case where "the subject of an adoption petition has been adjudicated to be neglected pursuant to D.C.Code § 16-2301 et seq." because such an interpretation would not only render superfluous the preceding sentence of that subsection in a substantial category of adoption cases, it would also run the risk of undermining the due process rights of parents whose children have been adjudicated as neglected. Instead, we conclude that the language in Super. Ct. Adoption R. 4(e)(3) regarding neglected children is included as an example of when a court might order service by posting or publication, "[u]pon a determination that service under subparagraphs (e)(1) and (2) will not be effective."
[11] As an initial matter, we note that while appellant alleges a due process violation under the Fourteenth Amendment, that amendment does not apply to the District of Columbia. District of Columbia v. Carter, 409 U.S. 418, 424, 93 S.Ct. 602, 34 L.Ed.2d 613 (1973) ("[S]ince the District of Columbia is not a `State' within the meaning of the Fourteenth Amendment, neither the District nor its officers are subject to its restrictions.") (citing Bolling v. Sharpe, 347 U.S. 497, 499, 74 S.Ct. 693, 98 L.Ed. 884 (1954); Shelley v. Kraemer, 334 U.S. 1, 8, 68 S.Ct. 836, 92 L.Ed. 1161 (1948); Wight v. Davidson, 181 U.S. 371, 384, 21 S.Ct. 616, 45 L.Ed. 900 (1901)). We assume, therefore, just as we did in Olafisoye v. United States, 857 A.2d 1078, 1085 n. 10 (D.C.2004), that appellant meant to cite the Due Process Clause of the Fifth Amendment, which does apply to the District of Columbia. See also McNeil v. United States, 933 A.2d 354, 362 n. 11 (D.C.2007).
[12] Furthermore, we note that counsel for the appellant appeared at the hearing and represented to the court that she had spoken with appellant twice in the preceding two weeks. When the court asked why appellant was absent, counsel's response was only that "[appellant is] not waiving her right to personal service, Your Honor." The trial court concluded that appellant had actual notice of the hearing "but was unable to attend due to an unspecified prior obligation." The trial court's finding that appellant had actual notice merely underscores our independent determination that service by posting in this case was "reasonably calculated, under all the circumstances," to provide appellant with notice of the adoption proceeding. Mullane, supra, 339 U.S. at 314, 70 S.Ct. 652.